**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PEPSI COLA COMPANY OF LUMBERTON, INC., Respondent.**

No. 73-1834.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1974.

Decided May 8, 1974.

Paul J. Spielberg and John Depenbrock, Attys., N. L. R. B. (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., on brief), for petitioner.

Joel I. Keiler, Washington, D.C., for respondent.

Before CRAVEN and WIDENER, Circuit Judges, and WARD, District Judge.*

HIRAM H. WARD, District Judge.

The National Labor Relations Board has petitioned for enforcement of an order directing Respondent to cease and desist from unfair labor practices committed in connection with a strike in April 1972, and to reinstate four strikers with back pay. We enforce the Board's order except as it requires reinstatement of Charles Taylor and William Jones.

◼ We are satisfied that substantial evidence supports the Board's conclusion that Respondent's plant manager engaged in interrogation and surveillance in violation of Section 8(a)(1), 29 U.S. C. § 158(a)(1), and its decision that the

* M.D.N.C., sitting by designation.

discharge of route driver Val Iacona was motivated by antiunion considerations in violation of Section 8(a)(1) and (3), 29 U.S.C. § 158(a)(1) and (3). The only aspect of the Board's order that troubles us is its order for reinstatement of two employees who joined in a strike to protest Iacona's discharge.

■ There is no question that the week-long strike was motivated solely by Iacona's discharge and was, therefore, an unfair labor practice strike. On April 12 the union representative, acting for the strikers, made an unconditional offer to return to work. Respondent refused to reinstate several of the strikers on the ground that they were guilty of serious strike misconduct.

The Administrative Law Judge made extensive factual findings and ordered four employees reinstated. The Board adopted his recommendation of reinstatement as to Jerry Bailey and Charles Taylor added the name of William Jones to the reinstatement list, but refused to reinstate Iacona and William DeBerry. Its order to reinstate Bailey, as well as denying reinstatement of Iacona and DeBerry, is thoroughly justified by the record and is based upon substantial evidence. Under our previous decisions, however, Charles Taylor's conduct justified Respondent's refusal to reinstate him and the Administrative Law Judge properly concluded that Respondent was under no obligation to reinstate Jones.

■ Taylor was involved in three separate incidents of a questionable nature during the strike, but one incident is more serious than the other two. Taylor approached a car where a prospective job-seeker and his wife were sitting, stuck his head in the window, and said, "I know where you live, and if you go in there to work, I'll come looking for you."[1] The job-seeker left the premises. The hearing judge commented only briefly on this incident:

> With regard [to] the incident of the threat which took place on the first day of the strike, to the extent that it is a threat, I do not believe that it is of such nature as to warrant Taylor's disqualification for reinstatement.

The Board adopted this recommendation without comment.

■ Our previous decisions establish that strikers are entitled "to use arguments in support of their position and to attempt by proper means to induce other persons not to work at the jobs that they have vacated by striking." National Labor Rel. Bd. v. Longview Furniture Co., 206 F.2d 274, 276 (4th Cir. 1953). We have held, however, that "their persuasive efforts cannot be free of all restraints but must be circumscribed and confined within reasonable limits if such strikers are to be protected in their right to reinstatement to their former positions to which the courts have held they are entitled." Oneita Knitting Mills, Inc. v. N. L. R. B., 375 F.2d 385, 390–391 (4th Cir. 1967). Recognizing that some confrontations between strikers and nonstrikers are inevitable, we have drawn the line at conduct that is intended to threaten or intimidate nonstrikers. Oneita Knitting Mills, supra. The Board apparently drew a different distinction in this case. Refusing to order Iacona's reinstatement because he had made "a specific threat of personal physical harm" to a driver who worked during the strike,[2] it must have con-

---

1. This is the version given by Company Attorney Keiler, who was on the scene. Mrs. Brindle testified that Taylor said, "[H]e knew where we lived at and he would be to see us." She added, "[H]e didn't say anything about getting us or anything like that. He just said he would be to see us." Mr. Brindle recalled Taylor's words as "I know where you live at." He was not asked whether Taylor said anything more. The hearing judge did not resolve this conflict in testimony, apparently because he concluded that even Keiler's version would not disqualify Taylor for reinstatement. We think that the implied threat is the same in all three versions.

2. The Board's opinion recorded Iacona's threat as follows: "Iacona told Smith that 'Flippen had been beaten up, that the guys

cluded that Taylor's threat was less serious. We cannot agree that a veiled threat is substantially different from one delivered with less subtlety. Under any of the three versions, Taylor's words crossed the line from persuasion to threats and intimidation.

Our final concern is the Board's order that the employer reinstate William Jones, who made no personal application for reinstatement at the end of the strike. Following the union representative's telephone offer on behalf of the strikers, the employer invited the men to return to the plant and interviewed them individually on April 12. Jones did not appear. On April 14 the Respondent sent him a certified letter notifying him that his position had been filled by a permanent replacement and that his name had been placed on a preferential hiring list. The record clearly indicates that Jones has had no contact with either the Respondent or the union from the time the strike ended until the N.L.R.B. hearing. Moreover, at the latter time, he was apparently in the Armed Services.

■■■ As an unfair labor practice striker, Jones was entitled to reinstatement upon application even if the employer had hired a permanent replacement. The Board held that Jones would be excused from applying for reinstatement because "his application would have been utterly futile." Even if Jones would have been told on April 12 that he had been permanently replaced, we cannot agree that the employer committed an unfair labor practice by failing to reinstate him when he did not come back for his job.[3] This is not a situation in which the employee may be excused from applying for reinstatement because he has already received notification of his replacement. *Cf., e. g.,* Colecraft Manufacturing Co. v. N. L. R. B., 385 F.2d 998 (2d Cir. 1967); N. L. R. B. v. Comfort, Inc., 365 F.2d 867 (8th Cir. 1966). Although Respondent would have been obligated to reinstate Jones if he had applied for reinstatement within a reasonable period after the end of the strike, that obligation is conditioned on the application. The Board may not dispense with the requirement for application when the employee has been in touch with neither the employer nor the union unless circumstances show that the employer had already made clear an intention not to reinstate him.

Enforced in part, vacated in part, and remanded.

that did it were in cars riding around, and he'd be better off if he went back to the plant.'" The Board was confident that Iacona meant to threaten Smith rather than to warn him.

3. Unlike discharging a striker, the act of hiring a permanent replacement is not an unfair labor practice. The unfair labor practice consists of refusing to reinstate the unfair labor practice striker when he applies for his job. As courts and the Board have stated the rule, the unfair labor practice striker has a right to be reinstated to his job even though the employer has hired a replacement. *E. g.,* N.L.R.B. v. Comfort, Inc., 365 F.2d 867 (8th Cir. 1966); Bob

White Target Co., 189 N.L.R.B. 913, 77 L. R.R.M. 1201 (1971), enforcement denied on other grounds, sub nom., Cannady v. N.L.R. B., 466 F.2d 583 (10th Cir. 1972) (holding that workers were engaged in economic strike rather than unfair labor practice strike); J. H. Rutter-Rex Mfg. Co., Inc., 158 N.L.R.B. 1414 (1966), enforced in part, 399 F.2d 356 (5th Cir. 1968), rev'd, 396 U. S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969) (reversing the Court of Appeals' modification of Board order). The employer is free to hire replacements during an unfair labor practice strike, but he must make room for the strikers when they return, firing the replacements if necessary.