**EQUAL EMPLOYMENT OPPORTUN-
ITY COMMISSION, Plaintiff,**

v.

**C & D SPORTSWEAR CORPO-
RATION, Defendant.**

Civ. A. No. 75–1–VAL.

United States District Court,
M. D. Georgia,
Valdosta Division.

June 3, 1975.

Motion for Costs Granted July 14, 1975.

Alfonso McGhee, Associate Regional Atty., Equal Employment Opportunity Commission, Atlanta, Ga., for plaintiff.

John M. Capron, Fisher & Phillips, Atlanta, Ga., for defendant.

## OPINION AND ORDER

ELLIOTT, Chief Judge.

This is an action brought by Plaintiff Equal Employment Opportunity Commission (hereinafter EEOC) against Defendant C & D Sportswear Corporation (hereinafter C & D). The EEOC contends that the discharge by C & D of one Gladys Thomas, in 1969, constituted a violation of Section 704(a) of Title VII of the Civil Rights Act, as amended, 42 U.S.C. Section 2000e–3(a). C & D has moved to dismiss the action or, in the alternative, for summary judgment. At the request of both parties, the Court heard oral argument on C & D's motions on April 25, 1974.

For the reasons set forth below the Court will grant Defendant's Motions. Based on the Complaint, and the numerous attachments to the Briefs submitted by both parties, and the hearing, it appears there is no dispute as to the following facts:

On the 20th of May, 1969, there was an altercation on the floor of C & D's plant between Gladys Thomas and the then-president of the Company, Ben Dinnerman. The next day Dinnerman's son, Irving Dinnerman, sent Mrs. Thomas home pending investigation of the dispute. The following Monday, May 26, Irving Dinnerman interviewed Thomas. During that interview Thomas stated that it was her opinion that Dinnerman had sent her home the previous week because he (Dinnerman) was a racist. Dinnerman was incensed at this accusation of racism and discharged her therefor.

Thomas then filed charges with the Equal Employment Opportunity Commission, complaining that she had been discharged because of her race. Nearly

three years later, on February 3, 1972, Eduardo Pena, the Commission's Director of Compliance, issued a decision, reportedly on behalf of the Commission, holding that there was reasonable cause to believe that C & D had violated Title VII by discharging Thomas because "she opposed practices made unlawful by Title VII". He found there was *not* reasonable cause to believe that Thomas was discharged because of her race.

Conciliation efforts were apparently undertaken, but to no avail, and, by letter dated June 28, 1972, Thomas was advised of the failure of conciliation, and of her right to bring action against C & D within 90 days of the receipt of the letter. By letter of even date, C & D was advised that an action could be brought against it within 90 days of Thomas' receipt of her letter.

Thomas failed to bring any action against C & D.

The EEOC brought this action on January 2, 1975.

In support of its Motion to Dismiss, or In the Alternative, Motion for Summary Judgment, C & D makes the following arguments:

(1) This action is not timely brought;

(2) Having issued a right-to-sue notice to the Charging Party, the EEOC is barred from bringing this action;

(3) The EEOC improperly delegated to subordinated officials its statutory authority to make the determination as to reasonable cause, the determination that conciliation had failed, and the decision to bring suit;

(4) The EEOC denied Defendant procedural due process;

(5) The EEOC had not complied with its own procedural regulations, more specifically Section 1601.23; and

(6) As a matter of law C & D's conduct did not constitute retaliation within the meaning of Section 704(a) of the Act.

I am persuaded by arguments (1), (2) and (6) and therefore find it unnecessary to rule on arguments (3), (4) and (5).

*The State Statute of Limitations*

In *Equal Employment Opportunity Commission v. Griffin Wheel*, 511 F.2d 456, (5 Cir., 1975), it was held that applicable state statutes of limitation (in this case Georgia Code Annotated § 3–704, providing that all actions for the recovery of wages shall be brought within two years after the right of action shall have accrued) may bar any recovery of back pay in actions brought by the EEOC.

Since the last actionable conduct occurred on the date of Thomas' discharge, more than five and one-half years prior to the bringing of this action, the EEOC may not recover any back pay for Thomas.

*Griffin Wheel* also held that the state statute of limitations does not bar the EEOC's actions insofar as it sought injunctive relief. However, the Court indicated at footnote 5 of its Opinion that the doctrine of *laches* would remain applicable. In order that the EEOC's action be barred by *laches*, inexcusable delay, resulting in prejudice to the Defendant, must appear. *Akers v. State Marine Lines, Inc.*, 344 F.2d 217 (5 Cir. 1965). Both are present here.

A review of the EEOC Decision dated February 2, 1972, indicates that, at the time of the discharge, Ben Dinnerman, whose testimony, of necessity, would play a role in the trial of this cause, was 70 years of age. It is entirely likely that the elder Dinnerman's recollection of events which occurred 6 years prior to any testimony would not be entirely reliable. Indeed, no one's memory would be entirely reliable. Moreover, the EEOC's own regulations, appearing at Section 1602.14 permit the destruction of all pertinent records after the expira-

tion of the Charging Party's right to bring any action.

Finally, the June 28, 1972 notice from the EEOC to C & D gave no indication whatsoever that the EEOC could bring its own action. The only reference to the possibility of suit was the statement that ". . . a civil action may be brought against the respondent . . . *within* ninety (90) days after the receipt of [the notice to Thomas]". C & D could quite reasonably have concluded that upon the expiration of that period, no action could be brought.

 Accordingly, I find that the EEOC's inexplicable delay in bringing this action has prejudiced C & D in its ability to defend itself, and therefore, I find that this action is barred by the doctrine of laches.

*The Effect of the Issuance of the Right-to-Sue Notice*

C & D argues that the EEOC, having issued Thomas the notice of her right to sue, is barred from thereafter maintaining an action on her behalf.[1]

Under Defendant's theory, when the EEOC issues a Charging Party notice of his or her right to sue (other than at the specific request of the Charging Party), the EEOC has necessarily made the determination that the case is not of such public importance to warrant the EEOC's maintenance of its own action on the charge. This argument finds support in the statute, the policy against "duplicitous lawsuits" and the EEOC's own regulations.

Under the statutory scheme set forth in Section 706(f), if the EEOC has been unable to conciliate the dispute within thirty days of the filing of the charge, the EEOC is given the authority to bring an action against Respondent.

Thereafter the person or persons aggrieved may, if they wish, intervene in that action. If after 180 days from the filing of the charge, it has *not* brought an action, or if it has not secured a conciliation agreement, the statute then requires the EEOC to notify the person aggrieved.[2] There is no provision in Section 706(f)(1) for the filing of an independent EEOC lawsuit after the reference to the right-to-sue notice. Following the provision for the issuance of the right-to-sue letter, the statute speaks only in terms of permissive intervention by the EEOC, upon certification that the case is of general public importance.

It would appear, therefore, that the statutory scheme is as follows. First, the EEOC is given the opportunity to negotiate a settlement. If no settlement is reached, the EEOC then considers whether it wishes to institute a civil action. If it does determine to file a suit, the person aggrieved is given a right to intervene. If it determines that no EEOC suit is to be filed, the person aggrieved is then notified of the failure of conciliation and that the EEOC has not sued on his or her behalf, and the aggrieved party then has the right to bring an action within 90 days of the receipt of that notice.

If, while the EEOC is pondering the importance of the issue, the charging party grows impatient, he or she may, 180 days after the filing of the charge, request a "right-to-sue" notice. In such a case, however, the EEOC may still determine that the case is of sufficient public importance to warrant intervention, upon a certification that the case is of general public importance.

Defendant has submitted an Affidavit by Thomas W. McPherson, District Director of the Atlanta District Office

---

1. At the hearing, Counsel for the EEOC admitted that this was a "one on one" situation, i. e., the EEOC does not seek relief for any other person or persons.

2. C & D argues that the Commission may not maintain this action more than 180 days after the filing of the charge, but, in its brief, recognizes that I am bound by the decision of the United States Court of Appeals for the Fifth Circuit in *L & N Railroad Co.*, FEP Cases 1316 (5 Cir. 1975).

of the EEOC, wherein Mr. McPherson testified that once conciliation efforts have been exhausted, his office refers the file to the Regional Litigation Center in order that a judgment may be made as to whether that case represents an appropriate vehicle for litigation. He testified that only in the event the Regional Litigation Center returns the file, or if the Charging Party so requests, will he issue a notice of right to sue to the aggrieved individual. The "right-to-sue" notice in this case issued following failure of conciliation. There is no suggestion that Thomas requested the notice.

While the EEOC denies the validity of the McPherson Affidavit, the EEOC's Field Manual, at Section 82.3, lends credence to C & D's interpretation:

*Upon failure of conciliation—*

When the District Director determined that conciliation efforts have failed, he/she will notify the parties as provided in Section 1601.23 of the Commission's regulations. The District Director shall then refer the entire case file to the Regional Attorney, using the transmittal memorandum of Exhibit 32A. For cases of particular interest, the District Director shall attach a memorandum describing the reason for wishing to have the case litigated and providing any other information which may assist the Regional Attorney in making a determination. *The District Director will not issue the notice of right-to-sue at this time except at the request of the person aggrieved.* (Emphasis supplied.)

It would appear, therefore, that prior to issuing the "right-to-sue" notice the EEOC had already made the determination that the case was not an appropriate vehicle for litigation. Accordingly, if Thomas *had* brought her own individual action, the EEOC could not intervene in the action, since Congress has required a certificate of general public importance in such a case.

Quite obviously, this is *not* a case of "general public importance". The

EEOC's counsel stated in chambers that this is simply a "one on one" dispute. Indeed, it would appear from the McPherson affidavit, from the quoted section of the EEOC's field manual, and from the statutory scheme discussed above, that the determination has already been made that this is not a case of general public importance. If it had been, Thomas would not, except at her specific request, have received her notice of her right to sue. I cannot believe that Congress intended the EEOC to maintain an action on its own behalf under circumstances which would preclude it from intervening in a private action. It is equally unlikely that Congress intended that the EEOC's right to litigate in a given case would depend on whether the Charging Party exercised the right to sue immediately upon receipt of the right-to-sue notice. Thus, if the issuance of the right-to-sue notice did *not* cut off the EEOC's right to maintain its own action it could bring a civil action on that charge up until the charging party filed. If charging party does file, however, the EEOC could intervene only if the case were certified to be one of general public importance. Congress could not have intended that the EEOC's standing to litigate depends on the outcome of a "race to the Courthouse" between the EEOC and the Charging Party.

Finally, if the EEOC were permitted to maintain this action now, it would completely negate the specific statutory prohibition against a private party's maintenance of an action on his or her charge more than 90 days after the receipt of the right-to-sue notice. The statute provides that where the EEOC has brought an action, the person aggrieved may intervene. If the EEOC's ability to maintain the action survives the issuance of the right-to-sue notice and the expiration of the charging party's right to maintain an action, Thomas would now be able to intervene in this action. Such an interpretation would be repugnant to the statute.

In any event, I note that in *EEOC v. Huttig Sash & Door,* 511 F.2d 453 (5 Cir., 1975), the Court held that the EEOC could not maintain an action on behalf of one particular person where that person previously filed a lawsuit and then dismissed the action. In *Huttig,* the charging party filed, within the time allowed, a lawsuit against Huttig. Thereafter his attorney moved for leave to dismiss the action. I can see no difference between voluntary dismissal of an action and a voluntary failure to bring an action within the time allowed.

■ Accordingly, I find that the EEOC's issuance of a "right-to-sue" notice, without being requested to do so, and Thomas' failure to bring an action within the time allowed, extinguished the right of the EEOC to maintain an action on her behalf.

*An Unwarranted Accusation of Racism, Unless Part and Parcel of the Process of Filing Charges with the EEOC, Does Not Constitute "Opposition to Unlawful Employment Practices" Within the Meaning of Title VII*

Section 704(a), 42 U.S.C. § 2000e–3(a) provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

■ The EEOC's decision found *there was no reasonable cause* to believe that C & D had discharged Thomas because of her race. However, it is apparently the position of the EEOC that employees are free to accuse their employer of racism regardless of whether that accusation is well-founded. There is no contention on the part of the EEOC that she was discharged as retaliation for filing charges, since the discharge antedated her filing of the charge.

The issue, therefore, is whether an employee is free to make unfounded accusations of racism against his or her employer, without recourse to the EEOC's processes.

In *Pettway v. American Cast Iron Pipe Company,* 411 F.2d 998 (5 Cir. 1969), an employee was discharged for filing baseless charges against his employer with the EEOC. Although the Court held that the accusation was protected, it held that protection was required *in order to protect the employee's right to file charges.*

> We hold that *where* disregarding the malicious materials contained in a charge . . . *the charge otherwise satisfies the liberal requirements of a charge,* the charging party is exercising a protected right under the Act. 411 F.2d at 1007. (Emphasis supplied.)

Thus, baseless accusations may very well be protected, but only as a means of protecting access to the Commission.

In *Ripp v. Dobbs Houses,* 366 F. Supp. 205 (W.D.Ala.1973), the court interpreted *Pettway* in just this fashion, and dismissed a complaint based on "retaliation" where the plaintiff made no contention that the defendant interfered with his access to the EEOC.

In *Ammons v. Zia,* 448 F.2d 117, 3 EPD ¶ 8329 (9 Cir. 1971), the plaintiff was discharged because, among other reasons, "she constantly complained of low pay based on her sex". After determining that she had failed to prove that this disparity of wages was due to her sex, the court held that her discharge was not actionable.

Certainly, access to the EEOC must be protected. On the other hand, accusations of racism ought not to be made lightly. Unfounded accusations might well incite racism where none had previously existed. Were employees free to make unfounded accusations of racism against their employers and fellow employees, racial discord, disruption, and disharmony would likely ensue. This

would be wholly contrary to Congress' intention that race be removed, as far as possible, as an issue in employment.

■■ Accordingly, the only reasonable interpretation to be placed on Section 704(a) is that where accusations are made in the context of charges before the EEOC, the truth or falsity of that accusation is a matter to be determined by the EEOC, and thereafter by the courts. However, where accusations are made outside the procedures set forth by Congress that accusation is made at the accuser's peril. In order to be protected, it must be established that the accusation is well-founded. If it is, there is, in fact, an unlawful employment practice and he has the right, protected by Section 704(a), to oppose it. However, where there is no underlying unlawful employment practice the employee has no right to make that accusation in derogation of the procedures provided by statute. In cases arising under the National Labor Relations Act, there is a similar result. If, during the term of a no-strike agreement, employees strike to protest an unfair labor practice and their employer is, in fact, guilty of an unfair labor practice, the striking employees may not be disciplined for such a protest. However, if there is *no* underlying unfair labor practice, the employee loses his protection under Section 7 of the Act and may be discharged. See, generally, *Mastro Plastics, Inc. v. NLRB*, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956). Even if there is no contract, the striker is subject to permanent replacement. *NLRB v. Pepsi Cola Co. of Lumberton, Inc.*, 496 F.2d 226 (4 Cir. 1974). In short, the unfair labor practice striker acts at his peril. If the National Labor Relations Board finds there *is* an underlying unfair labor practice, the striker is entitled to reinstatement upon his offer to return to work. If the National Labor Relations Board does *not* find an underlying unfair labor practice, however, the striker is subject to discharge or replacement. *NLRB v. Cactus Petroleum*, 355 F.2d 755 (5 Cir. 1966).

In the instant case the EEOC did not find any underlying unlawful employment practice. Accordingly, I find that as a matter of law Thomas' unwarranted accusation was not protected by, and C & D did not violate, Section 704(a) of the Act.

*Attorneys' Fees*

C & D has requested that the Court exercise its discretion provided in Section 706(k), 42 U.S.C. Section 2000e–5(k) and award it reasonable attorneys' fees to be taxed against the EEOC, citing *Van Hoomissen v. Xerox Corp.*, 497 F.2d 180 (9 Cir. 1974). C & D's motion for attorney's fees was not discussed at the hearing on its motion to dismiss. Accordingly, the parties will be granted twenty (20) days following the entry of judgment within which to present argument and evidence on the issue of the propriety of granting attorneys' fees to C & D and the amount thereof.

It is the Order of this Court that the Complaint in this matter be dismissed in its entirety, with prejudice.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR AWARD OF ATTORNEY'S FEES AS PART OF COSTS

By opinion and order filed June 3, 1975 the Court determined that the complaint in this matter should be dismissed in its entirety, with prejudice, and reserved for later consideration the Defendant's motion for an award of attorney's fees. Counsel for the parties have now submitted briefs on this question and an affidavit has also been submitted in support of the Defendant's motion.

■ Section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(k) provides as follows:

"In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Com-

mission and the United States shall be liable for costs the same as a private person."

Thus, the applicable law clearly provides that the prevailing party in a case of this nature is entitled to recover attorney's fees if the Court in the exercise of its discretion determines that such an award is appropriate, and such awards have been held proper against the Commission. *Van Hoomissen v. Xerox Corporation,* 503 F.2d 1131 (9 Cir. 1974).

As was noted in the opinion previously filed, the Congress intended that the Commission commit its litigation resources only to cases of "general public importance". The primary purpose of the agency was to be conciliation and not litigation, and certainly the Congress did not intend that the Commission enter into litigation lightly, asserting causes of action with little or no substance. The Court makes no determination with regard to whether this litigation was instituted by the Commission in bad faith, not finding it necessary to do so. What the Court does determine is that this was clearly not necessary litigation dictated by any substantial public interest. In this case the Commission sued to redress an alleged unlawful employment practice which occurred more than five and one-half years prior to the institution of suit, and the alleged practice was not a "systemic" one which affected a number of employees nor was it one of a series of alleged unlawful employment practices. Instead, it affected only one individual who, having been given notice of her right to sue years ago, nevertheless failed to pursue it. Finally, the undisputed facts show that the Defendant did not violate the statute in the first place. Indeed, the Court has had some difficulty in discerning the reason for the institution of this suit. The complaint was based on a stale charge and stale facts and did not relate to a matter of general public importance, but instead was so unimportant that the only person allegedly wronged had apparently forgotten about it or at least did not have sufficient interest in it to ever institute a suit in her own behalf.

Although the complaint has been dismissed, the Defendant was nevertheless required to defend itself against the action, and in asserting its defense it was necessary for the Defendant to incur the expense of substantial attorney's fees and other costs. The Court concludes that this is clearly an appropriate case for the award of attorney's fees.

The affidavit of Defendant's counsel shows that counsel spent at least sixty-two hours in connection with the representation of the Defendant in this matter, and, based on this affidavit, the Court determines that the Defendant should be awarded attorney's fees in the amount of $2,170.00. Additional out-of-pocket litigation expenses were incurred by the Defendant in the amount of $211.26, which amounts the Defendant is likewise entitled to recover. It is, therefore, ordered that judgment be entered in favor of the Defendant and against the Plaintiff for total costs in the amount of $2,381.26.