EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Plaintiff,

v.

AMERICAN NATIONAL BANK,
Defendant.

Civ. A. No. 76–26–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Aug. 31, 1976.

Spencer H. Lewis, Jr., E.E.O.C., Philadelphia Regional Litigation Center, Philadelphia, Pa., James A. Oast, Jr., Asst. U. S. Atty., Norfolk, Va., for plaintiff.

Paul M. Thompson, Hunton & Williams, Richmond, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

This is an action brought pursuant to 42 U.S.C. § 2000e, et seq., commonly referred to as Title VII of the Civil Rights Act of 1964, as amended, by the Equal Employment Opportunity Commission [hereinafter referred to as "EEOC"] claiming that the Suffolk Branch of the American National Bank has been since May, 1969 and is now guilty of discriminatory employment practices. The Complaint seeks equitable relief in the form of an injunction against further discrimination, the requirement that defendant institute an affirmative action program, and back pay for those discriminated against.

The matter comes before the Court on the defendant's Motion for Summary Judgment based on two grounds. First, the EEOC cannot establish that the charging party, Sandra Holland, ever filed an application for employment with the Suffolk Branch of the American National Bank, and second, the affirmative defense of laches based on the presence of unreasonable delay and resulting prejudice.

### Facts

A review of the Complaint, Answers to Interrogatories, documents submitted pursuant to motions to produce and depositions heretofore taken, establish the following uncontradicted facts:

1. The action is based on a charge filed with the EEOC by Sandra Holland in which Mrs. Holland claims to have filed an application for employment with the Suffolk Branch of the American National Bank in May, 1969 and that she was not hired because she was black.

2. EEOC undertook to investigate the charge.

3. It was not until May 11, 1974, that the EEOC made a "Determination" based on the charge.

4. Conciliation was unsuccessfully attempted after the determination of May 11, 1974.

5. On August 22, 1974, EEOC issued a "Right-to-Sue" letter to Mrs. Holland.

6. Mrs. Holland did not file suit following receipt of the "Right-to-Sue" letter from EEOC.

7. On January 21, 1976, six and one-half years after the initial charge, the EEOC filed this action based upon the Holland charge.

8. Plaintiff's answer to first interrogatories clearly shows that as of the time of filing this suit the sole individual claiming to be aggrieved by American National Bank's Suffolk Branch's alleged discriminatory practices was Sandra Holland, and that the charge of discrimination relied upon in bringing the suit was dated June 19, 1969.

### Applicability of Affirmative Defense

 Although it is clear, in this Circuit at least, that the EEOC is not bound by any strict statutory time limits in bringing its actions, either state or federal,[1] nonetheless, a limitation on EEOC enforcement powers may be found in traditional notions of equity and the Administrative Procedure Act, 5 U.S.C. § 706(1).[2] There are many cases

---

1. See *EEOC v. Cleveland Mills Co.,* 502 F.2d 153 (4th Cir. 1974), *cert. denied* 420 U.S. 946, 95 S.Ct. 1328, 43 L.Ed.2d 425 (1975).

2. 5 U.S.C. § 706 provides, in part:
 "To the extent necessary to decision and when presented, the reviewing court shall

decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
 "(1) compel agency action unlawfully withheld or unreasonably delayed; and

which state as a general principle that the doctrine of laches may not be imputed against the Government to bar its actions in court. See, for example, *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); *Chromcraft Corp. v. EEOC*, 465 F.2d 745, 746, n.2 (5th Cir. 1972). (The latter case, while denying the applicability of laches as such, did note the applicability of the Administrative Procedure Act as an equitable limitation.) On the other hand, it is clear that the Government is not universally immune from claims of delay and resulting prejudice. See *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), a commercial case which ruled that a Federal standard applied to determine whether delay was unreasonable and prejudicial and assumed that the sovereignty of the Government did not shield it from such defenses. "The fact that the drawee is the United States and the laches those of its employees are not material." [citation omitted] *Id.* at 369, 63 S.Ct. at 576. As a general proposition, then, the question of the applicability of laches against the Government is not "well settled." [3]

■ In order to file suit against employers or others to vindicate the public interest, the EEOC must have a charge filed with it by an alleged victim of discrimination or by a member of the Commission. (42 U.S.C. § 2000e–5) The charge is the starting point for investigation and may lead to allegations of widespread discrimination by the party being investigated. However, it is notice of the initial charge which is given to the employer and on which the EEOC must rely as a "ticket" into court. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970). This restriction shows that the EEOC may not rely solely on theoretical adherence to its laudable purpose, but rather must be presented with actual controversies and allegations. Even if continuing, broad-based discrimination is alleged, the EEOC is limited in proceedings by the existence of specific charges, even though the relief available and even the types of discrimination alleged go beyond what the charging party may have claimed.[4]

■ Fundamental fairness should require reasonably prompt action by the Government when seeking to impose substantial penalties on parties charged with discrimination. Unconscionable delay in proceedings under Title VII not only disserves the policy of ending discrimination while leaving the alleged victim of discrimination without relief,[5] but also the parties charged

"(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
"(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;"

3. Despite frequent dictum to the contrary, see *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940), the question still depends on the facts and circumstances of each case.

4. The Court is mindful of the recent statement by the Fourth Circuit:
"But, unlike the individual charging party, the EEOC, when it sued, did so 'to vindicate the public interest' as expressed in the Congressional purpose of eliminating employment discrimination as a national evil rather than for the redress of the strictly private interests of the complaining party. Because of this significant difference, the EEOC's suit was 'broader [in scope] than the interests of the charging parties.' It follows that the standing of the EEOC to sue under Title VII cannot be controlled or determined by the standing of the charging party to sue, limited as he is in rights to the vindication of his own individual rights. To hold otherwise, as did the District Court, would be to continue treating the sole purpose of the Title to be the correction of individual wrongs rather than of public or 'societal' wrongs as well as to deny to the EEOC the right to be any more than a mere proxy for the charging party rather than what Congress by the Amendments of 1972 intended, i. e., the public avenger by civil suit of any discrimination uncovered in a valid investigation and subjected to conciliation under the Act."
*EEOC v. General Electric Co.*, 532 F.2d 359 (1976) [footnotes omitted].

5. The instant case is an example where the delay has continued for such a duration that the original charging party can no longer remember even applying for a job with the defendant at the time charged. (Holland deposition, pp. 12, 13, 14 & 15) She also has obviously, over the years, lost whatever personal stake or interest she may have had in the case.

are left in the Damoclean situation of never knowing when an old charge may spring back into life as the basis of a lawsuit against it. The proper functioning of administrative agencies and the proper relationship between a government and its citizens, individual and corporate, should not allow the unending possibility of litigation on forgotten matters.

Fortunately, the legal system is not powerless to deal with such problems. The precise question of the applicability of laches and 5 U.S.C. § 706(1) against the EEOC has been considered by several other district courts.

Acting under somewhat confusing guidance from the Fifth Circuit, Chief Judge Edenfield in a pair of unrelated cases finally declined, because of inadequate authority from the Fifth Circuit,[6] to hold that laches was applicable against the Government but did rule that a court, using 5 U.S.C. § 706(1), could achieve the same result, namely bar an agency from proceeding when its unreasonable delay has prejudiced the defendant. *EEOC v. Moore Group, Inc.,* 416 F.Supp. 1002 (N.D.1976); *EEOC v. Metro Atlanta Girls' Club,* 416 F.Supp. 1006 (N.D.Ga.1976).

In those cases, Judge Edenfield discussed the notations from the Fifth Circuit regarding limitation on EEOC enforcement power. In his first order in the *Moore Group* case, 11 EPD ¶ 10, 886 (March 25, 1976), he cited *United States v. Georgia Power Co.,* 474 F.2d 906 (5th Cir. 1973) and *EEOC v. Griffin Wheel,* 511 F.2d 456, which apparently endorsed application of the doctrine of laches. In *EEOC v. Exchange Security Bank,* 529 F.2d 1214 (1976), the Fifth Circuit failed to mention the doctrine of laches while considering the question of delayed enforcement. In doing so, however, as noted in *Moore Group, supra,* the court made clear that unreasonable delay, if proved, which results in prejudice, if proved, could constitute a defense under 5 U.S.C. § 706(1).

This was the doctrine applied by Chief Judge Edenfield. In *Moore Group,* the factors of unreasonable delay and prejudice were found; in *Atlanta Girls' Club,* they were not. Thus, application of an equitable limitation has been endorsed by the Fifth Circuit, whether identified as laches or 5 U.S.C. § 706(1).

Two earlier cases applied laches against the EEOC and barred suit. *EEOC v. C & D Sportswear Corp.,* 398 F.Supp. 300 (M.D.Ga. 1975) and *EEOC v. J. C. Penney Co.,* 12 FEP Cases 640 (N.D.Ala. December 16, 1975). In the *C & D* case, the Court noted the passage of six years and the advanced age of a key defense witness and found unreasonable delay resulting in prejudice to the defendant. In the *Penney* case, the court applied the doctrine and found laches based on delays far shorter than in the instant case.

In *EEOC v. Nicholson File Co.,* 408 F.Supp. 229 (D.Conn.1976), the court recognized the availability of "[a]n equitable defense, in the nature of laches," the elements of which could be demonstrated at trial.

■ Thus, there is ample authority for the proposition that an administrative agency such as the EEOC, even in the absence of specific statutory time limits, may not postpone enforcement indefinitely without excuse to prejudice of the defendant. As Judge Edenfield put it in his first decision in *Moore Group:*

"The EEOC indeed has a duty to vindicate the important public rights secured to all citizens under Title VII; it may not, however, do so in a manner which rides roughshod over the rights of private parties and the notions of fairness and due process as well. If this defendant is indeed engaging in discriminatory employment practices, the victims thereof are free to file fresher charges with the EEOC. The Commission shall not be allowed to proceed further on the inexcus-

---

**6.** The Fifth Circuit, in a footnote, did express approval of the application of laches: "[T]he doctrine of laches would remain applicable." *EEOC v. Griffin Wheel Co.,* 511 F.2d 456, 459 n.5 (1975). However, Judge Edenfield considered this dictum and, under the circumstances, ambiguous.

ably stale charges herein." 11 EPD Cases 7740.

Imposition of this equitable limitation, whether under the theory of laches or under authority of 5 U.S.C. § 706(1), should not hamper the legitimate functioning of the agency. It is still free to investigate fully any other charge that may be made. No adverse impact on EEOC conciliation process should result because dilatory bargaining by a defendant which increases the passage of time will not aid in establishment of this defense. The agency will merely be required to act with greater dispatch in those cases where the defendant is likely to be harmed by inexplicable delay.

### Elements of the Defense

■ As alluded to above, the elements of the affirmative defense, here denominated as "in the nature of laches," (regardless of its source in general equity or the Administrative Procedure Act) are: (1) unreasonable or unexplained delay in bringing proceedings and (2) resulting prejudice to the defendant. See *EEOC v. Moore Group, Inc.*, 416 F.Supp. 1002 (N.D.Ga.1976); see also, *Gardner v. Panama R. Co.*, 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951); *EEOC v. Exchange Security Bank*, 529 F.2d 1214 (5th Cir. 1976).

Determining the existence of these elements requires analysis of the facts presented, and it is to this the Court now turns.

### Inexcusable Delay

■ The only explanation made by the EEOC for the almost seven-year delay in this case was that the workload of the EEOC is heavy. In considering and rejecting the application of a 180-day limitation on actions by the EEOC, the Fourth Circuit noted the EEOC's backlog and stated:

"These conditions make it highly unlikely that the Congress would have considered the imposition of narrow and precise time limits upon the Commission's right to file an action for judicial enforcement." *EEOC v. Cleveland Mills Co.*, 502 F.2d 153 (4th Cir. 1974).

Release from inflexible time restraints, however, is not authorization for investigations of indefinite duration or limitless postponement of initiation of suit following the failure of conciliation.

■ The facts of this case clearly show an investigation which was not started until nine months after the charge was filed (See Area Director's Findings of Fact, December 30, 1970) and which endured for four years more before the making of a reasonable cause determination. (See Determination of Treadwell O. Phillips, March 11, 1974.) In addition, a seventeen-month period elapsed following the failure of conciliation and the issuance of the "Right-to-Sue" letter before suit was filed. No excuse for such extraordinary delays has been offered by the EEOC, other than its workload. (See EEOC Memorandum at P. 5) This is not an especially involved case which might justify a lengthy investigation. Indeed, the EEOC asserted, in answer to defendant's interrogatories that "[t]he identity of all other persons who were unlawfully denied equal opportunity in employment by Defendant [would be] subject to ascertainment during discovery proceedings." (Plaintiff's answer to defendant's first set of interrogatories, No. 13). In other words, the nearly seven years of formal investigation and trial preparation by the EEOC failed to identify a single additional particular victim of discrimination. Thus, the time required for such investigative activities was not required by the complexity of the case. Absent special circumstances, the mere existence of a burdensome workload does not justify delays of the magnitude present in

this case.[7] It is worth noting again that the policy of seeking non-judicially enforced compliance through the statutorily required conciliation procedure is not jeopardized because any delay caused by the employer's lack of cooperation is not unreasonable or unexplained.

Accordingly, this Court deems the delay in this case to be unexplained and inexcusable, satisfying the first factor of the affirmative defense.

### Prejudice to Defendant

■ The mere passage of time is insufficient to establish a defense in this case. The defendant must also show prejudice to its defense as a result of the unreasonable delay.

The District Court in *EEOC v. C & D Sportswear Corp.*, 398 F.Supp. 300 (M.D.Ga. 1975), pointed out that a witness whose testimony would play a role in the trial of the cause was seventy years of age at the time of the taking of his deposition three years prior to the trial of the case. In that case, the Court stated "It is entirely likely that the elder Dinnerman's recollection of events which occurred 6 years prior to any testimony would not be entirely reliable. Indeed, no one's memory would be entirely reliable." In the case before this Court, it appears that testimony vital to the defendant's case would have to be given by Mr. E. T. Jakeman, who was sixty-six years of age in 1969 and who is now 72 years of age. Neither Mr. Jakeman nor two other witnesses of importance to the defense are currently employed by American National Bank. Mr. Jakeman retired in 1970 and the other two gentlemen left the Bank in 1973 and early 1975, respectively.

The prejudice to the defendant in this case is further borne out by the actual evidence of Sandra Holland and E. T. Jakeman. Mrs. Holland now states in her deposition that she is unable to produce any records pertaining to any charge that she may have filed against American National Bank because she had thrown them away "a long time ago" (Holland Dep. p. 5); that she applied to many banks (Holland Dep. pp. 5, 10, 12, 15, 22, 52, 54); that she was mixed up on the dates of her application filings (Holland Dep. p. 10); that she cannot remember whether she filled out the application at the Bank and filed it at that time or whether she took the application home and filled it out and later mailed it in (Holland Dep. pp. 11, 12); that she doesn't know who she talked to at the Bank (Holland Dep. p. 17); that she doesn't remember where she signed the complaint or charge which is the basis of this action or who was present when she signed it (Holland Dep. pp. 19, 20, 21). She also indicated that she had moved from Suffolk to Portsmouth, Virginia, in May or June, 1969 (Holland Dep. p. 32). Most importantly, she now does not remember if she filed an application with the Suffolk Branch of American National Bank in May of 1969 (Holland Dep. pp. 12, 13, 14, 15).

The affidavit of Mr. E. T. Jakeman, who is now retired, but who was manager of the Suffolk Branch of American National Bank in May, 1969, states that no May, 1969 application for employment by Sandra Holland was found in the Bank's records; an October, 1969 application was found (This, however, was shown by other evidence to have been filed at the Portsmouth office for

7. The other cases which have barred EEOC action because of unreasonable and prejudicial delay involved time periods shorter than the instant case. Note the comparison:

| Case | Time from charge to reasonable cause determination | Time from failure of conciliation to suit | Total Time (including attempted conciliation) |
|---|---|---|---|
| C & D Sportswear Corp. | 2¾ yrs. | 2½ yrs. | 5½ yrs. |
| J. C. Penney Co. | 1½ yrs. | 2 yrs. | 4 yrs. |
| Moore Group, Inc. | 2¾ yrs. | 1½ yrs. | 5 yrs. |
| American National Bank | 4¾ yrs. | 1½ yrs. | 6½ yrs. |

Note also that the delay sustained by the Fourth Circuit in *Cleveland Mills Co.* involved "only" a three-year investigation and suit was filed only about three months following the failure of conciliation, time periods substantially shorter than the case at bar.

a job in Portsmouth and plays no part in the Holland charge which is the basis of this action.); he remembers two Negro girls coming into his office sometime in 1969, only one of which wanted to apply for a job; the lady wanting to apply had worked at B. D. Laderberg's, a place where Sandra Holland had worked; an application blank was given to the Negro lady and she was told she could fill it out at the Bank and leave it or she could take it home and fill it out and mail it in. Mr. Jakeman has no recollection of receiving the application in the mail.

The defendant hotly contests the allegation that the complainant ever filed the application for employment which was the basis for her charge and, in turn, the basis for the EEOC action against the defendant. From the foregoing excerpts from the record, it can be seen that there is a genuine issue of fact as to whether the application for employment was ever filed even if the application blank was ever secured.

The records of Mrs. Holland might well have shown what banks she filed with and have shown that she did not file with American National Bank, Suffolk Branch. Neither Jakeman nor Holland can be expected seven years after the alleged interview to be able to identify the other or exclude the other as the person talked to. The defendant is now denied its right to cross-examine its accuser as she no longer has any remembrance of any important aspect of this material issue.

This Court, therefore, is of the opinion that the uncontradicted facts established in this case constitute sufficient prejudice to the defendant to satisfy the requirement of the affirmative defense in the nature of laches. Accordingly, by reason of the foregoing and on the basis of the authorities cited, defendant's motion for summary judgment because of unreasonable delay resulting in prejudice by the plaintiff EEOC is hereby GRANTED.

The Court having found that a defense in the nature of laches applies, it is unnecessary to pass on the other ground urged by the defendant for dismissal, that is, that the EEOC is not able to prove that its charging party, Sandra Holland, ever actually filed an application with the Suffolk Branch of the American National Bank at the time charged.

The Court, in dismissing this action on the ground of laches or under authority of 5 U.S.C. § 706(1), is not harming Mrs. Holland as she voluntarily chose not to bring an action herself when she was advised that she could do so in 1974. Furthermore, if any other person determines to file a charge against the American National Bank, the EEOC would not be precluded from bringing an action on the basis of that new complaint. Therefore, if the EEOC's allegations are correct and American National Bank, Suffolk Branch, is guilty of discriminatory conduct, such conduct is subject to legal remedy.

The requirement, imposed here, of a fresher charge on which to base a complaint is more than an idle technicality. . While this requirement does not interfere with vindication of the public interest in cases of continuing discrimination, it assures a defendant that there is some end to the possibility of litigation over ancient charges. Fundamental fairness requires no less.

The motion for summary judgment is GRANTED and this action is DISMISSED, with prejudice.