Edith ROSSER, Plaintiff-Appellant,

v.

LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL NUMBER 438, Defendant-Appellee.

No. 78–2287.

United States Court of Appeals, Fifth Circuit.

May 2, 1980.

Stanley M. Baum, Atlanta, Ga., for plaintiff-appellant.

Adair, Goldthwaite, Stanford & Daniel, William McHugh, Jr., Atlanta, Ga., for defendant-appellee.

Before INGRAHAM, RONEY and THOMAS A. CLARK, Circuit Judges.

INGRAHAM, Circuit Judge:

Plaintiff Edith Rosser, a former employee of the Laborers' International Union of North America, Local Number 438 (the union), appeals from a summary judgment entered against her and in favor of the union in a cause of action brought by her

under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* She had alleged that she was discharged because of her opposition to union practices made unlawful by Title VII. The district court found that the form of Mrs. Rosser's opposition, an attempt to defeat her immediate supervisor in his bid for re-election, was not protected by the statute and the union therefore had a valid defense to a prima facie case of discrimination. We affirm the order granting summary judgment.

Mrs. Rosser began her employment with the union on June 15, 1966, working as a dues posting clerk, a position she held for nearly six years until her discharge in May 1972. Her immediate supervisor throughout her period of employment was J. B. Underwood, the man who had originally hired her. He served as the union's secretary-treasurer, a position to which he was elected by union members. As a member of the office staff, Mrs. Rosser was permitted to join the union so as to receive the various fringe benefits.

In April 1972, Mrs. Rosser was approached by some black union members who convinced her to be a candidate in direct opposition to Underwood at the next election. They felt that the union was discriminating against its black members and Mrs. Rosser, a black, would do a better job of representing them. Mrs. Rosser was in fact nominated to run against Underwood; however, her qualification was successfully challenged. The International Union disqualified her as a candidate since she was not a union member "working at the call-

ing," as required by the union constitution. Underwood was subsequently re-elected and two days later Mrs. Rosser was discharged.

Mrs. Rosser filed charges with the Equal Employment Opportunity Commission (EEOC) asserting that she was discharged because of her race and sex after she attempted to obtain an elective position never before held by a black or female.[1] She claimed that her candidacy was in opposition to practices made unlawful under Title VII and she was thus protected from discharge for displaying such opposition. The EEOC issued a determination letter which was in general agreement with Mrs. Rosser's contentions.[2]

Conciliation efforts were unavailing, however, and the EEOC issued a right to sue letter on December 1, 1975. On February 27, 1976, Mrs. Rosser filed this action pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The amended complaint alleged that she was discharged from her employment because she "opposed practices made unlawful by Title VII" in violation of § 704(a), 42 U.S.C. § 2000e–3(a).

The union moved to dismiss the action on the ground of collateral estoppel based on the decision against Mrs. Rosser in her cause of action under Title I of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 411(a)(2) and 529, *see Rosser v. Laborers' International Union, Local No. 438*, 381 F.Supp. 605, 607 (N.D.Ga.1974) *(Rosser I)*. The district court denied the motion to dismiss. Thereafter, the union

---

1. Mrs. Rosser had also sought relief under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 411 and 529, alleging that she was unlawfully discharged due to her union activities. Prior to the completion of the EEOC investigation and conciliation process, the district court held, relying on *Wambles v. International Brotherhood of Teamsters, Chauffeurs*, 488 F.2d 888 (5th Cir. 1974), that "appointed officers and employees were subject to discharge, without cause." *Rosser v. Laborers' International Union, Local No. 438*, 381 F.Supp. 605, 606 (N.D.Ga.1974) *(Rosser I)*. The union's motion for summary judgment in that case was granted and there was no appeal. The *Wambles* holding was later limited to its facts in

*Miller v. Holden*, 535 F.2d 912, 916 (5th Cir. 1976).

2. The EEOC did find, however, and there is no contrary assertion on appeal, that there was no reasonable cause to believe that Mrs. Rosser was discharged by reason of her sex. Rather, the EEOC found reason to believe that she was discharged because, as a candidate, she sought better minority representation in opposition to controlling union forces. Her discharge was thus an unlawful retaliation under § 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), for resisting practices made unlawful by Title VII.

moved for summary judgment. The court found that there was a disputed issue of fact as to whether the discharge was based in part on an unlawful discriminatory motive. Additionally, the court found that Mrs. Rosser was engaged in "opposition" within the scope of § 704(a) and the opposition was directed at a practice made unlawful under Title VII. However, the court ultimately granted the motion since it found that the form of Mrs. Rosser's opposition, an attempted political ouster, was not protected by the statute and the union thus had a valid defense to her prima facie case. Mrs. Rosser perfected her appeal to this court.

The sole question for resolution in this appeal is whether Mrs. Rosser's form of opposition to a practice made unlawful under Title VII is protected activity within the statute. We hold that such activity is not protected. Thus, since the district court's findings were not clearly erroneous, and the union had a valid defense as a matter of law, the district court was correct in granting the union's motion for summary judgment.

■ It is clear that an alleged failure to fairly represent black union members is an "unlawful employment practice" under Title VII.

> It shall be an unlawful employment practice for a labor organization—
>
> (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;
>
> (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section. 42 U.S.C. § 2000e–2(c).

Moreover, to say an unlawful employment practice exists only where the union acts as employer as opposed to representative would do injustice to both the spirit and letter of Title VII.

■ Section 704(a) clearly states that to discriminate against one who opposes an unlawful employment practice is itself an unlawful employment practice:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Thus, where a union as employer allegedly discriminates against an employee because that employee criticizes an alleged unlawful employment practice by the union in its representative capacity, the employee has a claim against the union under § 704(a). Based on the facts of this case, Mrs. Rosser clearly made out a prima facie case of discrimination under the above principles. There is no genuine dispute as to this premise and the union's cursory argument to the contrary is without merit.

■ Even though opposition to an unlawful employment practice is protected, such protection is not absolute. There may arise instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective in the position for which he was employed. In such a case, his conduct, or form of opposition, is not covered by § 704(a). *See Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 230–33 & n. 6 (1st Cir. 1976); *Doe v. AFL–CIO, Department of Organization, Region 6, Atlanta, Georgia*, 405 F.Supp. 389, 392–94 (N.D.Ga. 1975), *aff'd*, 537 F.2d 1141 (5th Cir. 1976). We believe that on balance, this is just such an instance.

It is clear, as the district court found, that Underwood's effectiveness as secretary-treasurer depended in large part on Mrs. Rosser's cooperation as dues posting clerk. It is equally clear that by seeking to unseat him from his job, Mrs. Rosser placed her loyalty in question. That too could only serve to diminish her effectiveness. We feel that since her loyalty and cooperation were in doubt as a result of her active political opposition to Underwood's candidacy, he had a valid non-discriminatory reason for discharging her.

Mrs. Rosser argues that to affirm the district court's summary judgment while the fact issue on motive for discharge remains disputed permits an employer to mask an unlawfully discriminatory motive for discharging an employee behind the defense of "an unprotected form of political opposition." Conversely, however, to hold otherwise would permit any employee to seek his boss' job and then insulate himself from discharge by merely alleging opposition to racial discrimination or some other unlawful employment practice protected under Title VII. We believe that such a situation was not intended in Title VII. As was noted in *Hochstadt, supra,* courts are "left to develop their own interpretation of protected opposition." *Id.* at 230. In the context of actions brought under labor statutes, *compare Wambles v. International Brotherhood of Teamsters, Chauffeurs,* 488 F.2d 888 (5th Cir. 1974) *with Rosser I, supra* (no cause needed to fire appointed officers and employees). We find that Title VII does not protect Mrs. Rosser's form of opposition. She could have actively opposed union policies or any allegedly unlawful employment practices in a variety of ways that would have come under § 704(a)'s umbrella.[3] In deciding to challenge her supervisor directly, she left herself out in the rain.

We conclude that although Mrs. Rosser made out a prima facie case of discrimination, the union had a valid defense since the chosen form of her opposition, a political challenge, is not protected under Title VII. As such, the district court did not err in granting the union's motion for summary judgment. Its order is therefore

AFFIRMED.

---

3. For example, Mrs. Rosser could have sought election to some other post, assisted union members in filing charges with the EEOC, or actively voiced other forms of opposition without calling into question her loyalty or effectiveness at her job.