**Charles PAYNE, Plaintiff-Appellee,**

v.

**McLEMORE'S WHOLESALE & RETAIL STORES, a Louisiana Corporation, Defendant-Appellant.**

**No. 79–3674.**

United States Court of Appeals, Fifth Circuit.

Unit A

Sept. 4, 1981.

Rehearing and Rehearing En Banc Denied Oct. 16, 1981.

G. Phillip Shuler, David L. McComb, Jarrell E. Godfrey, Jr., New Orleans, La., for defendant-appellant.

R. James Kellogg, New Orleans, La., for plaintiff-appellee.

Before COLEMAN, GARZA and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

This is a Title VII action alleging that in early 1971, defendant McLemore's Wholesale & Retail Stores, Inc. failed to rehire plaintiff Charles Payne because of his par-

ticipation in activities protected by section 704(a) of the Civil Rights Act of 1964. 42 U.S.C.A. § 2000e–3(a). The district court concluded that plaintiff successfully carried his ultimate burden of proving discrimination. The district court found that plaintiff established a prima facie case of discrimination under section 704(a) by showing that the employer's failure to rehire plaintiff was caused by plaintiff's participation in boycott and picketing activities in opposition to an unlawful employment practice of the defendant. In addition, the district court found that plaintiff proved that the employer's proffered explanation for its failure to rehire the plaintiff—that plaintiff failed to reapply for a job with the employer—was merely pretextual. Because the finding of retaliatory discrimination is supported by requisite subsidiary facts, we affirm the district court judgment for the plaintiff.

During the period of time in which the actions challenged by plaintiff took place, McLemore's Wholesale & Retail Stores was a commercial partnership whose partners were J. W. McLemore, Jr., and Quinten McLemore, both of Winnsboro, Louisiana. The partnership's operations included McLemore Wholesale Grocery, McLemore Jitney Jungle (a retail grocery operation), McLemore Farm Store (a light hardware, sporting goods, western wear, feed, seed, fertilizer, and chemical sales store), and Big M. Mobile Homes (a retail mobile home outlet). McLemore's Wholesale & Retail Stores, Inc., a Louisiana corporation, was incorporated August 26, 1975. In 1976, when this lawsuit was filed, the operation of McLemore's Wholesale & Retail Stores, Inc. had not changed significantly from the time it was a partnership; it continued to maintain the same operations that it had for the past several years. The officers, principal stockholders, and two of the directors of the corporation were J. W. McLemore, Jr., and Quinten McLemore.[1]

Although there is some confusion with respect to the exact time at which plaintiff began working for defendant, it appears that plaintiff began his employment with defendant about May or June of 1966. Plaintiff originally worked in McLemore's fertilizer plant.[2] The operation of the plant was seasonal in nature since the demand for fertilizer was dependent upon the farmers' planting seasons. During the first two years of plaintiff's employment with defendant, he was laid off for three months each year during the seasonal decline in work. In later years, during the off-season plaintiff was not laid off, but was instead shifted to positions in other parts of the defendant's operations. As a result, during his employment with McLemore's, plaintiff worked as a fertilizer plant operator, a truck driver, a warehouse worker, a dock worker, and a farm store porter.

In November 1970, plaintiff was once again laid off due to the seasonal business decline. Two other black employees and two white employees were laid off at the same time. About a month later, plaintiff became involved in the formation and organization of the Franklin Parish Improvement Organization, a nonprofit civil rights organization. The formation of the Improvement Organization was precipitated by an incident involving two black children who were turned away from a public swimming pool. The organization was interested in improving social conditions of blacks in Franklin Parish, and it focused especially on the need to get blacks hired in retail stores

---

1. On July 15, 1976, defendant McLemore's Wholesale & Retail Stores, Inc. filed a motion to dismiss for failure to state a claim upon which relief could be granted. Defendant noted that plaintiff's complaint challenged actions of the defendant taken in early 1971. Defendant then contended that it did not exist in 1971; rather, it acquired its present status as a corporation on August 26, 1975, when it was incorporated under the laws of Louisiana. On July 28, 1976, the district court denied defendant's motion to dismiss, apparently because of the substantial identity between the former partnership and the present corporation. This ruling is not challenged by defendant on appeal. (The defendant will hereinafter be referred to simply as McLemore's.)

2. McLemore's owned and operated the fertilizer plant until January 1978, at which time the plant was sold.

in money-handling and supervisory positions in order to improve the treatment that blacks received while shopping in stores. Shortly after its formation, the members of the organization decided to boycott several retail businesses, including those of defendant in Winnsboro. Plaintiff organized and implemented the boycott and was actively involved in picketing McLemore's Jitney Jungle Food Stores. Defendant knew of plaintiff's involvement in the boycott and picketing. Moreover, the boycott and picketing were effective and defendant's business suffered as a result.

In previous years when he had been laid off, plaintiff had always gone back to work for defendant when the work picked back up. In the year of the boycott, however, he was not recalled or rehired.[3] In February 1971, plaintiff filed a charge of discrimination against McLemore's with the Equal Employment Opportunity Commission (EEOC). The charge alleged that plaintiff was not called back to work because he had attended a civil rights meeting. A February 1974 letter from the EEOC inviting the parties to engage in conciliation efforts characterized plaintiff's charge as alleging that defendant "failed to recall him following a layoff because of his race . . . and because of his participation in Civil Rights activities." Record, vol. 1, at 106. The EEOC ultimately issued a right to sue letter on March 23, 1976.

On June 17, 1976, plaintiff filed this action in federal district court alleging that defendant's failure to rehire plaintiff was a result of plaintiff's race and his civil rights activity.[4] In its answer, McLemore's denied

that it had committed any discriminatory actions, and asserted that the reason the plaintiff was not rehired was because he failed to reapply for a position with McLemore's after he was laid off. The district court held that plaintiff did reapply for his job, but that he was not rehired because of his participation in boycotting and picketing activities. The court further found that participation in the boycott and picketing was protected activity under section 704(a) of Title VII; in other words, the district court concluded that the boycott and picketing were in opposition to an unlawful employment practice of the defendant. The court awarded plaintiff back pay, costs, and attorney's fees totalling $16,260.90.

The opposition clause of section 704(a) of Title VII provides protection against retaliation for employees who oppose unlawful employment practices committed by an employer. (Section 704(a) also contains a participation clause that protects employees against retaliation for their participation in the procedures established by Title VII to enforce its provisions. The participation clause is not involved in this lawsuit.) The opposition clause of section 704(a) provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . *because he has opposed any practice made an unlawful employment practice by this subchapter* . . . .

42 U.S.C.A. § 2000e–3(a) (emphasis added).[5]

■ In this case, plaintiff contends that he was not rehired in retaliation for his

---

**3.** Of the four other employees who were laid off at the same time as plaintiff, only one was rehired—a black employee who was not involved in the boycott or picketing by the Franklin Parish Improvement Organization. Both plaintiff and Russell Brass (the other black employee who was laid of and not rehired) were involved in the boycott and picketing. According to defendant, the employee who was rehired was the only one of the five employees who were laid off that reapplied for a job.

**4.** Although the plaintiff originally alleged racial discrimination against him, he did not pursue that allegation at trial and no contention of

racial discrimination against the plaintiff is before this Court.

**5.** Section 703(a)(1), which deals with unlawful employment practices, states in pertinent part that:
> (a) It shall be an unlawful employment practice for an employer—
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

42 U.S.C.A. § 2000e–2(a)(1).

boycott and picketing activities[6] which were, according to plaintiff, in opposition to unlawful employment practices committed by McLemore's. Plaintiff asserted that the unlawful employment practices his boycott and picketing activities were intended to protest were McLemore's discrimination against blacks in hiring and promotion— specifically, McLemore's failure to employ blacks in money-handling, clerking, or supervisory positions. In demonstrating his contentions at trial, plaintiff had the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The burden than shifted to the defendant to articulate a legitimate, nondiscriminatory reason for the failure to rehire the plaintiff. *Id. See Texas Department of Community Affairs v. Burdin*, 450 U.S. 248, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Finally, if the defendant carried his burden, the plaintiff was entitled to an opportunity to show that the defendant's stated reason for its failure to rehire plaintiff was in fact pretextual. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *Burdine*, 101 S.Ct. at 1093. *See Whatley v. Metropolitan Atlanta Rapid Transit Authority*, 632 F.2d 1325, 1327–28 (5th Cir. 1980) (participation clause case).

■■■ "To establish a prima facie case under [section 704(a)] the plaintiff must establish (1) statutorily protected expression, (2) an adverse employment action, and (3) a causal link between the protected expression and the adverse action." *Smalley v. City of Eatonville*, 640 F.2d 765, 769 (5th Cir. 1981); *Whatley*, 632 F.2d at 1328. The first element of the prima facie case—statutorily protected expression—requires conduct by the plaintiff that is in opposition to an unlawful employment practice of the defendant. Thus, for the plaintiff to prove that he engaged in statutorily protected expression, he must show that the boycott and picketing activity in which he participated was in opposition to conduct by

McLemore's that was made unlawful by Title VII. According to the plaintiff, the purpose of the boycott and picketing was to oppose McLemore's discrimination against blacks in hiring and promotion. Plaintiff's complaint stated that the Franklin Parish Improvement Organization "engaged in the peaceful boycotting of Winnsboro stores, · among them McLemore's Jitney Jungle Food Stores, which had refused to employ blacks except in a few menial positions." Record, vol. 1, at 2. An affidavit prepared for the EEOC by plaintiff stated, "In December the Franklin Parish Improvement Organization organized and boycotted downtown stores because they refused to hire Blacks." *Id.* at 104. Testimony was offered at trial indicating that McLemore's discriminated against blacks in employment opportunities and that the boycott and picketing were in opposition to the failure of blacks to be given clerking, money-handling, and supervisory jobs in McLemore's enterprises, as well as in other enterprises in Winnsboro, Louisiana. Russell Brass, a witness for the plaintiff, testified that the purpose of the boycott was "to get some blacks hired in the stores." 1st Supp. Record at 87. The plaintiff testified that when the Improvement Organization was formed, it began investigating "why black people could not get some jobs." *Id.* at 27. In addition, he testified that immediately after the formation of the organization, "we started to work—worked at getting people jobs; going down and finding jobs—some could not get jobs." *Id.* at 26–27. When plaintiff's attorney was cross-examining Mr. J. W. McLemore, Jr., the following interchange took place:

Q. It was alleged that you and the other merchants would not hire blacks within a supervisory position and dollar handling positions, is that right?

A. That is incorrect so far as the McLemores were concerned.

Q. That was alleged, right?

A. Right.

---

**6.** While plaintiff originally made allegations of racial discrimination against him, those contentions are not before this Court on appeal.

*Id.* at 119–20. In addition, at his deposition, when J.W. McLemore, Jr., was asked what the reason for the boycott was, he stated:

A. They claimed that—uh—the merchants in Winnsboro were unfair to —uh—blacks.

Q. How were they unfair, did they say?

A. Said they were not—uh—employing them in—uh—supervisory and—uh— sales capacity and—uh—where they handled funds, money.

Record, vol. 2, at 288. Thus, there is substantial evidence to support the district court finding that the purpose of the boycott and picketing was to oppose defendant's discrimination against blacks in certain employment opportunities[7]—an unlawful employment practice under section 703(a)(1).[8]

██ Defendant argues, however, that plaintiff failed to establish his prima facie case because he failed to *prove* that defendant had committed any unlawful employment practices. Plaintiff responds that he was not required to *prove* the actual existence of those unlawful employment practices; instead, he asserts that it was sufficient to establish a prima facie case if he had a *reasonable belief* that defendant had engaged in the unlawful employment practices. We agree with plaintiff and conclude that it was not fatal to plaintiff's section 704(a) case that he failed to prove, under the *McDonnell Douglas* criteria for proving

an unlawful employment practice under section 703(a)(1), that McLemore's discriminated against blacks in retail store employment opportunities.

The Ninth Circuit was apparently the first appellate court to decide whether the opposition clause of section 704(a) required proof of actual discrimination. *Sias v. City Demonstration Agency*, 588 F.2d 692 (9th Cir. 1978). In *Sias*, the plaintiff alleged that he was discharged by the City Demonstration Agency (an agency of the City of Los Angeles) in retaliation for his opposition to acts of racial discrimination by the City of Los Angeles. The City did not deny that plaintiff "was discharged for writing a letter of grievance to the Regional Administrator of the Department of Housing and Urban Development (HUD). Rather, it contend[ed] that, inasmuch as the trial court made no finding of actual discrimination, it [could not] be held to have violated" section 704(a). *Id.* at 694. The Ninth Circuit concluded that "[s]uch a narrow interpretation . . . would not only chill the legitimate assertion of employee rights under Title VII but would tend to force employees to file formal charges rather than seek conciliation or informal adjustment of grievances." *Id.* at 695. The *Sias* court quoted extensively from *Hearth v. Metropolitan Transit Commission*, 436 F.Supp. 685 (D.Minn.1977), which held that "as long as the employee had a reasonable belief that

---

7. Defendant claims that plaintiff did not engage in the boycott and picketing to oppose unlawful employment practices of McLemore's. Instead, it is McLemore's contention that the boycott and picketing were conducted to publicize the issues of integration of public facilities and common courtesy to blacks. To support this allegation, defendant points to the incident that initiated the formation of the Franklin Parish Improvement Organization—two black children being turned away from the town's segregated public swimming pool. In addition, McLemore's points to testimony of Russell Brass, who stated at trial that, "[I]f a white lady was waiting on [a black customer] . . . and another white lady would come by then the . . . [saleslady] would . . . tell the black that they had to wait." 1st Supp. Record at 85. Although the Improvement Organization was, in part, occasioned by the position of blacks in Winnsboro in general, and although the boycott

and picketing may have been to some extent a protest of this position, the district court's conclusion that the boycott and picketing activity was in opposition to unlawful employment practices of McLemore's is supported by substantial evidence.

8. *See* note 5 *supra.* Section 703(a)(1) provides in part that it is an unlawful employment practice for an employer to refuse to hire or to discriminate against an individual with respect to privileges of employment because of the individual's race. According to plaintiff, McLemore's failed to hire blacks in or promote blacks to certain positions solely because of their race. Thus, plaintiff contended that McLemore's engaged in unlawful employment practices and that plaintiff's boycott and picketing were in opposition to those unlawful employment practices.

what was being opposed constituted discrimination under Title VII, the claim of retaliation does not hinge upon a showing that the employer was in fact in violation of Title VII." *Id.* at 688. The *Hearth* court went on to state:

> But this Court believes that appropriate informal opposition to perceived discrimination must not be chilled by the fear of retaliatory action in the event the alleged wrongdoing does not exist. It should not be necessary for an employee to resort immediately to the EEOC or similar State agencies in order to bring complaints of discrimination to the attention of the employer with some measure of protection. The resolution of such charges without governmental prodding should be encouraged.

> The statutory language does not compel a contrary result. The elimination of discrimination in employment is the purpose behind Title VII and the statute is entitled to a liberal interpretation. When an employee reasonably believes that discrimination exists, opposition thereto is opposition to an employment practice made unlawful by Title VII even if the employee turns out to be mistaken as to the facts.

*Id.* at 688–89 (footnote omitted), *quoted in Sias*, 588 F.2d at 695. The Seventh Circuit has also adopted this position. *Berg v. La Crosse Cooler Co.*, 612 F.2d 1041 (7th Cir. 1980). In *Berg*, the plaintiff was discharged when she challenged her employer's failure to provide pregnancy benefits as sex-based discrimination. After she was fired, the United States Supreme Court ruled that a disability benefits plan does not violate Title VII because of its failure to cover pregnancy related disabilities. *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). The Seventh Circuit held that where the employee opposed a practice that she reasonably believed was an unlawful employment practice under Title VII, her opposition was protected from retaliatory discharge even where the practice was later determined not be an unlawful employment practice. The court concluded that to interpret the opposition clause to require proof of an actual unlawful employment practice

> undermines Title VII's central purpose, the elimination of employment discrimination by informal means; destroys one of the chief means of achieving that purpose, the frank and nondisruptive exchange of ideas between employers and employees; and serves no redeeming statutory or policy purposes of its own. Section 2000e–3(a) plays a central role in effectuating these objectives. By protecting employees from retaliation, it is designed to encourage employees to call to their employers' attention discriminatory practices of which the employer may be unaware or which might result in protracted litigation to determine their legality if they are not voluntarily changed.

612 F.2d at 1045.

The Fifth Circuit has not heretofore directly addressed the issue whether proof of an actual unlawful employment practice is necessary under the opposition clause, or whether an employee is protected from retaliation under the opposition clause if the employee reasonably believes that the employer is engaged in unlawful employment practices. To the extent that earlier Fifth Circuit cases provide guidance to this Court, however, they indicate that the reasonable belief test of the Seventh and Ninth Circuits comports with the decisions of this Circuit and the policies underlying Title VII. In *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998 (5th Cir. 1969), this Court held that an employee was protected by the participation clause of section 704(a) from discharge in retaliation for filing a charge with the EEOC, regardless of the truth or falsity of the contents of the charge. The Court stated that:

> There can be no doubt about the purpose of § 704(a). In unmistakable language it is to protect the employee who utilizes the tools provided by Congress to protect his rights. The Act will be frustrated if the employer may unilaterally determine the truth or falsity of charges and take independent action.

*Id.* at 1004–05. Thus, the Court held that where the communication with the EEOC satisfied the requirements of a "charge," the charging party could not be discharged for the writing and the court could not "either sustain any employer disciplinary action or deny relief because of the presence of . . . malicious material." *Id.* at 1007.[9]

The Ninth Circuit recognized that the "considerations controlling the interpretation of the opposition clause are not entirely the same as those applying to the participation clause," and that the opposition clause "serves a more limited purpose" than does the participation clause. *Sias,* 588 F.2d at 695. However, interpreting the opposition clause to require proof of an actual unlawful employment practice would "chill the legitimate assertion of employee rights under Title VII," *id.,* just as surely as would interpreting the participation clause to require a truthful charge. On the other hand, interpreting the opposition clause to protect an employee who reasonably believes that discrimination exists "is consistent with a liberal construction of Title VII to implement the Congressional purpose of eliminating discrimination in employment." *Id.*

This Court is also provided with some measure of guidance by *Doe v. AFL–CIO,* 405 F.Supp. 389 (N.D.Ga.1975), *aff'd,* 537 F.2d 1141 (5th Cir. 1976), *cert. denied,* 429 U.S. 1102, 97 S.Ct. 1127, 51 L.Ed.2d 552 (1977). In that case, plaintiff, a union organizer for defendant AFL–CIO, alleged that he was discharged for his opposition to his employer's unlawful employment practices. The district court characterized plaintiff's opposition as follows:

Plaintiff often expressed his belief that the AFL–CIO and its affiliates were not responding to the needs of black workers, that the union movement historically had been insensitive to the needs of black workers, that blacks tended to be exploited by unions for membership purposes, that blacks had been excluded from the

---

9. Although this Court considers the reasoning of the *Pettway* decision to support the reasonable belief test in opposition clause cases, at least one district court has viewed the *Pettway* case quite differently. The district court in *EEOC v. C & D Sportswear Corp.,* 398 F.Supp. 300 (M.D.Ga.1975), held that "baseless accusations" were protected "only as a means of protecting access to the Commission." *Id.* at 305. Thus, that court concluded that the result in *Pettway* was limited to actions under the participation clause, and did not apply to actions under the opposition clause. The *C & D Sportswear* court held:

Accordingly, the only reasonable interpretation to be placed on Section 704(a) is that where accusations are made in the context of charges before the EEOC, the truth or falsity of that accusation *is a matter to be determined* by the EEOC, and thereafter by the courts. However, where accusations are made outside the procedures set forth by Congress that accusation is made at the accuser's peril. In order to be protected, it must be established that the accusation is well-founded. If it is, there is, in fact, an unlawful employment practice and he has the right, protected by Section 704(a), to oppose it. However, where there is no underlying unlawful employment practice the employee has no right to make that accusation in derogation of the procedures provided by statute.

*Id.* at 306. We find the reasoning of the *C & D Sportswear* district court unpersuasive and the result unjustifiably restrictive. In *C & D* *Sportswear,* an employee called the president of the company a racist and was discharged for making that accusation. The district court reasoned that

access to the EEOC must be protected. On the other hand, accusations of racism ought not to be made lightly. Unfounded accusations might well incite racism where none had previously existed. Were employees free to make unfounded accusations of racism against their employers and fellow employees, racial discord, disruption, and disharmony would likely ensue. This would be wholly contrary to Congress' intention that race be removed, as far as possible, as an issue in employment.

*Id.* at 305–06. While unfounded, inflammatory accusations of racism might, on balance, be found to provide the employer with a legitimate, nondiscriminatory reason for discharging an employee, this would neither require nor suggest that all unfounded accusations should be totally unprotected by the opposition clause of section 704(a). It is as important to protect an employee's right to oppose perceived discrimination by appropriate, informal means as it is to protect his right of access to the EEOC. An employee who engages in opposition activity should not be required to act at his own peril if it turns out that no unlawful employment practice actually exists, as long as the employee holds a reasonable belief that the unlawful employment practices do exist.

union elective process and leadership positions and, that black workers should seek active roles in union affairs. Plaintiff also expressed his view that the AFL–CIO leaders were regressive and lacked social awareness to the problems of black workers. *Id.* at 391. The plaintiff claimed that he was fired because of these statements which, according to him, were made in opposition to the discriminatory practices of the AFL–CIO and its affiliates. The district court concluded that plaintiff was lawfully discharged because "he was not an effective worker and refused to follow the instructions of his superior." In addition, "his employer suspected him of submitting inaccurate expense vouchers and ... he often bickered and quarreled over his assignments ...." *Id.* at 394. Thus, the district court concluded that the plaintiff had been discharged for legitimate and nondiscriminatory reasons.

In its findings of fact and conclusions of law, the district court noted that "[t]here has been no attempt to show by way of a statistical case or otherwise that the defendant has engaged historically in discriminatory employment practices." *Id.* at 392. There is no indication, however, that the court considered this to be fatal to plaintiff's section 704(a) case. Rather, plaintiff failed to recover because the employer was able to articulate legitimate, nondiscriminatory reasons for the discharge, and plaintiff

was unable to show that those reasons were merely pretextual. Indeed, the district court stated, albeit in dicta, that:

> The peculiar aspects of this case are that the philosophy of the plaintiff deals with race-related matters and some of his statements tended to criticize the union movement for its alleged failure to recognize and promote the interests of blacks. These beliefs of the plaintiff are certainly protected and the plaintiff could not be discharged for holding and espousing them.... The Court is of the opinion that plaintiff could not be discharged from his job for holding and expressing his beliefs *whether valid or invalid.*

*Id.* at 394 (emphasis added). While it is not definitive, the Fifth Circuit affirmance of this case would seem to indicate approval of the position that an employee need not offer proof of actual unlawful employment practices by his employer in order to establish a prima facie case under section 704(a).[10]

To effectuate the policies of Title VII and to avoid the chilling effect that would otherwise arise, we are compelled to conclude that a plaintiff can establish a prima facie case of retaliatory discharge under the opposition clause of section 704(a) if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices.[11] While the district court made no explicit finding that plain-

---

10. *Cf. Turner v. Texas Instruments, Inc.*, 555 F.2d 1251 (5th Cir. 1977) (where employer wrongly believes employee violated company policy, employer does not discriminate in violation of Title VII if it acts on that belief), *overruled on other grounds, Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

11. The First Circuit has adopted a somewhat different test than have the Seventh and Ninth Circuits. The First Circuit has not explicitly decided whether a section 704(a) plaintiff must "demonstrate that he harbored a 'reasonable belief' of discriminatory employer behavior" or whether the plaintiff must show that he harbored a " 'conscientiously held belief' of such misconduct." *Monteiro v. Poole Silver Co.*, 615 F.2d 4, 8 (1st Cir. 1980) (footnote omitted). The *Monteiro* court found that "[u]nder either standard—the employer's conduct being non-

discriminatory in fact—the plaintiff must show that his so-called opposition was in response to some *honestly held*, if mistaken, feeling that discriminatory practices existed." *Id.* (emphasis added) (footnote omitted). Thus, according to that court, if a reasonable person might have believed that the employer was engaged in unlawful employment practices, but the plaintiff actually did not in good faith hold such a belief, then the plaintiff's opposition conduct is unprotected. *Id.* at 8 n.6. We need not decide here whether it is necessary to adopt a good faith requirement in addition to the reasonable belief requirement since, in the case before this Court, the plaintiff believed—reasonably and in good faith—that McLemore's was engaged in unlawful employment practices, and plaintiff's opposition conduct was in response to this belief.

tiff's opposition was based upon a reasonable belief that McLemore's hiring and promotional policies violated Title VII, such a finding is implicit and is sufficiently supported by evidence in the record.[12] Thus, plaintiff established that he reasonably believed that defendant McLemore's discriminated against blacks in employment opportunities. Moreover, plaintiff showed that his boycott and picketing activities were in opposition to this unlawful employment practice. Defendant's failure to rehire the plaintiff was undoubtedly an adverse employment action. Finally, there was evidence to support an inference that defendant's failure to rehire plaintiff was causally related to plaintiff's boycott and picketing activities.[13] Thus, plaintiff successfully established a prima facie case, thereby raising an inference of unlawful discrimination under section 704(a). The burden then shifted to the defendant to "rebut the presumption of discrimination by producing evidence" of a legitimate, nondiscriminatory reason for its failure to rehire plaintiff. *Burdine*, 101 S.Ct. at 1094.

██ Defendant McLemore's steadfastly maintained at trial that the *only* reason plaintiff was not rehired was because he failed to reapply for a position with defendant. This comprised the full and complete extent of the rebuttal evidence presented by the agents of the defendant in an effort to articulate a legitimate, nondiscriminatory reason for the failure to rehire the plaintiff. Mr. Albert Hill, former manager of the fertilizer plant owned by McLemore's in 1970, testified on cross-examination as follows:

Q. Isn't it true that your position is that the only reason that [plaintiff] was not rehired is that he never reapplied for a job; is that correct?

A. That's correct.

Q. You were the person in charge of hiring and firing; is that correct?

A. That is correct.

. . . .

Q. It is your position, is it not, sir, that [plaintiff] never reapplied for the job?

A. He did not reapply for the job. He did not reapply for the job the next spring.

Q. He did not apply at any time during the spring of 1971?

A. I don't believe so.

1st Supp. Record at 127–28. Similarly, at his deposition Albert Hill testified as follows:

Q. Why didn't Charles Payne get rehired when your—when your work stoppage was over—when your—your lay off was over?

A. He didn't come back and ask for his job.°

Q. That's the only reason?

A. The only reason.

Record, vol. 1, at 267.

The Supreme Court has explained and clarified the nature of the rebuttal burden that shifts to the defendant as follows:

The defendant need not persuade the court that it was actually motivated by the proffered reasons . . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant.

---

12. The earlier quoted testimony of the plaintiff and of Russell Brass supports the conclusion that the plaintiff believed that the defendant was engaged in unlawful employment practices by virtue of McLemore's failure to hire blacks in or promote blacks to certain employment positions, and that this belief of the plaintiff was a reasonable one.

13. An inference that defendant's failure to rehire the plaintiff was caused by plaintiff's participation in the boycott and picketing activity was proper in view of the existence of evidence that the employer was aware of the plaintiff's activities and that, within a relatively short time after those activities took place, the adverse employment consequence occurred. The defendant was then entitled to an opportunity to introduce evidence to rebut this inference.

*Burdine*, 101 S.Ct. at 1094 (footnotes omitted). Here, the defendant McLemore's did "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." The single, exclusive reason relied upon by the defendant was that the plaintiff was not rehired because he failed to reapply for his position with the defendant. This reason—the failure to reapply—would, if believed, be legally sufficient to justify a judgment for the defendant. Thus, the defendant carried its rebuttal burden at trial.

After the defendant has an opportunity to rebut plaintiff's prima facie case, the plaintiff has a corresponding opportunity to show that the defendant's proffered explanation was in fact pretextual. Here, plaintiff presented substantial evidence that he did reapply for a job with McLemore's. The trial court found "as a fact that Mr. Payne did reapply for his position with the defendant corporation." Record, vol. 2, at 313. There is, therefore, substantial evidence in the record to support the district court's conclusion that the defendant's explanation for its failure to rehire the plaintiff was merely pretextual. The district court further found that members of McLemore's knew of plaintiff's participation in the boycott and picketing, and that there was a causal relationship between defendant's failure to rehire plaintiff and plaintiff's participation in the protest activity. There is also substantial evidence in the record to support the district court's conclusion in this regard. Thus, on the facts and arguments presented to the trial court, that court correctly held that the defendant's failure to rehire the plaintiff violated section 704(a); that is, that the defendant's stated reason for not rehiring the plaintiff (the plaintiff's failure to reapply for a job) was merely pretextual and that the defendant's actual reason for not rehiring the plaintiff was the plaintiff's participation in activities in opposition to unlawful employment practices of the defendant.

Now on appeal, for the first time, defendant contends that even if plaintiff's activity was in opposition to unlawful employment practices of defendant, plaintiff's actions were not protected by section 704(a) because the *form* of plaintiff's opposition was not covered by the statute. It is well-established that not all activity in opposition to unlawful employment practices is protected by section 704(a). *Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 229–34 (1st Cir. 1976). Certain conduct—for example, illegal acts of opposition or unreasonably hostile or aggressive conduct—may provide a legitimate, independent, and nondiscriminatory basis for an employee's discharge. *Id.* at 229. "There may arise instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective in the position for which he was employed. In such a case, his conduct, or form of opposition, is not covered by § 704(a)." *Rosser v. Laborers' International Union, Local 438*, 616 F.2d 221, 223 (5th Cir.), *cert. denied*, 449 U.S. 887, 101 S.Ct. 241, 66 L.Ed.2d 112 (1980). In order to determine when such a situation exists, the court must engage in a balancing test: "[T]he courts have required that the employee conduct be reasonable in light of the circumstances, and have held that 'the employer's right to run his business must be balanced against the rights of the employee to express his grievances and promote his own welfare.'" *Jefferies v. Harris County Community Action Association*, 615 F.2d 1025, 1036 (5th Cir. 1980) (quoting *Hochstadt*, 545 F.2d at 233).

It appears that a number of cases have assumed that it is part of defendant's rebuttal burden to show that the form of plaintiff's opposition was unprotected by the statute. *See, e. g., Rosser*, 616 F.2d at 223–24; *Jefferies*, 615 F.2d at 1035–37; *Hochstadt*, 545 F.2d at 229–34. If the defendant took an adverse employment action against the plaintiff because of opposition conduct by the plaintiff that was outside the protection of the statute, then the defendant may have had a legitimate, nondiscriminatory reason to justify its actions.

Thus, in the case before this Court, if the *form* of plaintiff's activities placed them outside the protection of section 704(a), then the defendant may have had a legitimate, nondiscriminatory reason for its failure to rehire the plaintiff. However, if the form of plaintiff's activities was the nondiscriminatory reason for the defendant's failure to rehire the plaintiff, it was the defendant's responsibility to introduce evidence to that effect at trial. In *Rosser*, for example, plaintiff was a dues posting clerk with the defendant union, and her immediate supervisor was the union's secretary-treasurer. Ms. Rosser was nominated to run against her supervisor for the secretary-treasurer position at the request of some black union members who felt that the union discriminated against its black .members. Although Ms. Rosser was subsequently disqualified from the race, she was discharged two days after her supervisor was re-elected. She brought a Title VII action, alleging that her candidacy was in opposition to practices made unlawful by Title VII, and that she was discharged in violation of section 704(a). The district court granted the union's motion for summary judgment on the ground "that the form of Mrs. Rosser's opposition, an attempted political ouster, was not protected by the statute and the union thus had a valid defense to her prima facie case" of discrimination. 616 F.2d at 223. The Fifth Circuit affirmed, finding that Ms. Rosser did make out a prima facie case of discrimination, but that "the union had a valid defense since the chosen form of her opposition, a political challenge, [was] not protected under Title VII." *Id.* at 224.

In *Gonzalez v. Bolger*, 486 F.Supp. 595 (D.D.C. 1980), the plaintiff, a former post office employee, brought an employment discrimination suit pursuant to section 704(a) alleging that he was discharged unlawfully in retaliation for his exercise of rights protected by Title VII. The district court made the following findings:

> At trial, plaintiff presented a *prima facie* case of retaliatory discrimination, by showing that he engaged in protected activities, that his employer was aware of the protected activities, and that he was subsequently discharged, within a relatively short time interval after his performance of the activities. This series of events is sufficient to enable a court to infer retaliatory motivation, absent further explanation from the employer....

> . . . .

> In rebuttal, however, defendant presented substantial proof, through testimony and documentary exhibits, that plaintiff's insubordination and disruptive outbursts were in fact the cause for his termination. These reasons, if accepted on the proof as a whole, would constitute a valid non-discriminatory explanation for defendant's action.

*Id.* at 601–02. Since the court further found that plaintiff failed to establish that defendant's proffered justification was in fact pretextual, the court concluded that "[b]ecause plaintiff exceeded the limits of reasonable opposition activity on a continuing basis and his dismissal is attributable to these transgressions, the Court is forced to conclude that his termination was not pretextual, but rather was for valid non-discriminatory reasons." *Id.* at 601. The *Gonzalez* court clearly placed the burden on defendant to show as part of its rebuttal burden, that the "plaintiff's excessive conduct was the cause for his termination." *Id.* at 603.

Similarly, in *Hochstadt* the plaintiff claimed that her discharge violated section 704(a). The court in that case formulated the issue as whether plaintiff's hostile conduct "afforded an independent, nondiscriminatory basis for her discharge, or whether it was protected 'opposition' conduct under section 704(a) ...." 545 F.2d at 229. This characterization of the issue indicates that the plaintiff's participation in activity unprotected by section 704(a) can provide the employer with a legitimate, nondiscriminatory reason for its employment actions. The *Hochstadt* court concluded that plaintiff's "serious acts of disloyalty, which damaged the employer's interests and were of an excessive nature which was not warranted as a response to any conduct of the

[employer]" provided the employer with a legitimate, nondiscriminatory basis for discharging the plaintiff. *Id.* at 234.

 It therefore becomes apparent that in the instant case, after plaintiff established his prima facie case, it was the responsibility of the defendant to show that the *form* of plaintiff's activities placed them outside the protection of section 704(a) and provided defendant with a legitimate reason for its failure to rehire the plaintiff. If the defendant intended to rely upon this contention, it was the defendant's responsibility to raise the issue at trial. Here, the defendant failed to offer *any* evidence at trial that its legitimate and nondiscriminatory reason for not rehiring the plaintiff was that plaintiff had engaged in hostile, unprotected activity that was detrimental to the employer's interests.[14] With respect to the defendant's burden of rebutting plaintiff's prima facie case, the *Burdine* Court stated that: "An articulation not admitted into evidence will not suffice. Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." 101 S.Ct. at 1094 n.9. If the defendant cannot meet its rebuttal burden by answer to the complaint or by argument of counsel at trial, the defendant undoubtedly cannot meet its rebuttal burden solely by argument of counsel for the first time *on appeal.* It is not permissible for this Court to relate the defendant's arguments on appeal back to the time of trial in order to determine whether defendant met its rebuttal burden at trial. Since the defendant failed to present *any* evidence at trial that the egregious and disruptive form of plaintiff's opposition constituted the legitimate reason

for defendant's failure to rehire plaintiff, the defendant surely did not carry its rebuttal burden on this issue at trial.

Defendant nevertheless urges that we consider this newly raised contention for the first time on appeal. "As a general principle of appellate review, this court will not consider a legal issue or theory that was not presented to the trial court.... '[J]udicial economy is served and prejudice is avoided by binding the parties to the facts presented and the theories argued below.'" *Bliss v. Equitable Life Assurance Society,* 620 F.2d 65, 70 (5th Cir. 1980) (quoting *Higginbotham v. Ford Motor Co.,* 540 F.2d 762, 768 n.10 (5th Cir. 1976)). This general rule of appellate review—that issues not raised in the trial court will not be considered for the first time on appeal—is not without its exceptions, however. Thus, "when a pure question of law is involved and a refusal to consider it would result in a miscarriage of justice," *Martinez v. Mathews,* 544 F.2d 1233, 1237 (5th Cir. 1976), the general rule will not bar a consideration of the new issue. *McCrary v. Poythress,* 638 F.2d 1308, 1314 n.6 (5th Cir. 1981); *Guerra v. Manchester Terminal Corp.,* 498 F.2d 641, 658 n.47 (5th Cir. 1974); *Evans v. Triple R Welding & Oil Field Maintenance Corp.,* 472 F.2d 713, 716 (5th Cir. 1973). *See Higginbotham,* 540 F.2d at 768 n.10 (The rule "does not apply if a manifest injustice would result from ignoring the new legal theory."). Some courts have stated that the consideration of a new issue for the first time on appeal requires the existence of "exceptional circumstances." *D. H. Overmyer Co. v. Loflin,* 440 F.2d 1213, 1215 (5th Cir.) ("In the absence of exceptional circum-

---

14. In addition, the defendant did not raise this issue in its pleadings. The only contention made by the defendant that the conduct of the plaintiff was not protected by section 704(a) was that the boycott and picketing were not in opposition to an unlawful employment practice of the defendant and so did not satisfy the requirements of section 704(a). Thus, the pretrial order stated:

In the alternative only, in the event that the Court finds that [plaintiff] was not recalled in early 1971 or that plaintiff was refused a position with defendant after plaintiff reap-

plied for a position with defendant in early 1971 because of plaintiff's militant activities, plaintiff must show that those militant activities were in opposition to any practice made an unlawful employment practice by Subchapter VI of Chapter 21 of 42 U.S.C.

Record, vol. 1, at 245. While defendant did allege that plaintiff's activity was not in opposition to an unlawful employment practice of McLemore's, defendant did *not* assert that the form of plaintiff's activity was outside the scope of section 704(a).

stances where a miscarriage of justice would result, a condition not present here, questions that were not presented to or passed on by the trial court will not be considered on appeal."), *cert. denied,* 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90 (1971). *See Triple R Welding,* 472 F.2d at 716.

While an issue will generally be considered for the first time on appeal when the issue is a purely legal one and the failure to consider it would result in a miscarriage of justice, "the rationale for the [general] rule *requires* its application if additional facts would have been developed in the trial court had the new theory been presented there . . . ." *Higginbotham,* 540 F.2d at 768 n.10 (emphasis added). When no further factual development is required and a miscarriage of justice would otherwise result, appellate courts in this Circuit have been willing to consider new issues for the first time on appeal. In *Triple R Welding,* for example, the district court denied a claim for indemnity by McDermott (the pro hac vice barge owner) against Triple R (the employer of the injured employee). McDermott had argued at trial that Triple R's duty to indemnify McDermott was based upon an *implied* warranty of workmanlike performance. The district court concluded that since there existed an *express* contract between McDermott and Triple R covering the warranty of workmanlike performance, McDermott could not rely on an *implied* warranty. On appeal, McDermott argued for the first time that it was entitled to indemnity under the contract. The Fifth Circuit stated:

It is apparent that appellants have changed their legal theory. Had they asserted a request for judgment of indemnity based on the express provisions of the written contract, they would undoubtedly have prevailed in the District Court. All of the evidence pertaining to the case is in the record, including the contract between McDermott and Triple R, and there is no failure therefore to have adequate evidence before the Court. However, it is clear from the District Judge's findings of fact, which we ap-

prove, the McDermott is entitled to indemnity for breach of the warranty of workmanlike performance against Triple R, but under the express provisions of its contract and not under a theory of implied warranty.

472 F.2d at 716. Since no further findings of fact were required to resolve this issue, and since the court of appeals concluded that a miscarriage of justice would occur if the Court failed to consider McDermott's right to indemnity under the contract, the Court allowed McDermott to raise this argument for the first time on appeal. Similarly, the Court in *T.J. Stevenson & Co. v. 81,193 Bags of Flour,* 629 F.2d 338 (5th Cir. 1980), allowed one of the parties to raise a new issue for the first time on appeal "because the issue is entirely a legal question and does not require the development of additional facts." *Id.* at 375.

The new issue that McLemore's wishes this Court to consider for the first time on appeal—whether the form of plaintiff's activities provided McLemore's with a legitimate, nondiscriminatory reason for its failure to rehire plaintiff—is not a pure question of law that would not require the development of additional facts. To find that opposition conduct is outside the protection of section 704(a), the court must engage in a balancing of the interests of the employer and the employee. Courts have required that the employee's conduct be reasonable in light of the circumstances and that the conduct not be *unjustifiably* detrimental to the employer's interests. When the defendant offers evidence that plaintiff's conduct was outside the protection of section 704(a), and therefore provided the defendant with a nondiscriminatory reason for its employment action, the plaintiff is entitled to an opportunity to show that his activities were reasonable under the circumstances and were warranted by the employer's conduct. This Court is not prepared to hold as a matter of law that participation in boycotting and peaceful picketing by a former employee who is not employed by the defendant at the time of his opposition conduct is outside the protec-

tion of section 704(a). At least where conduct is not unprotected as a matter of law, the fact finder must have an opportunity to hear evidence, to balance the competing considerations, and to reach a conclusion as to the reasonableness of the conduct. Here, defendant's failure to raise this argument at trial precluded the plaintiff from presenting any evidence that, under the circumstances, plaintiff's organization of a boycott and participation in a peaceful picket was neither unreasonable nor unprotected. This, further factual development would be essential for a proper resolution of this issue.

 In addition, we cannot say that a miscarriage of justice would result from a failure to consider this issue for the first time on appeal. First, it is not at all certain that McLemore's would have prevailed on this ground had it raised this issue below. Plaintiff's activity is not clearly unprotected activity since, at the time of the boycott and picketing, plaintiff was not actively working for McLemore's and thus had little opportunity for direct access to McLemore's in order to air his grievances.[15] Second, it was the defendant's responsibility to narrow the issues at trial. The defendant's reliance at trial exclusively upon a single argument to explain its failure to rehire the plaintiff—that plaintiff did not reapply for a job—served as a limitation upon the plaintiff's response. The contention made by the defendant dictated that plaintiff respond to *that* allegation by showing that *that* allegation was pretextual. The *Burdine* Court noted that one reason for placing a rebuttal burden upon the defendant was to enable the parties to narrow the issues during the progression of the trial. The *Burdine* Court stated:

> If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of

specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.

101 S.Ct. at 1094–95 (footnote omitted). Thus, when the defendant relied at trial solely upon the contention that plaintiff was not rehired because he did not reapply for a job, the defendant narrowed the factual inquiry to this issue alone. It became plaintiff's responsibility to show that this reason—the only reason offered by the defendant for the failure to rehire the plaintiff—was pretextual. Plaintiff was not required—indeed, would not have been permitted—to respond to an issue that defendant had never raised, either in its pleadings or in evidence introduced at trial. Where it is incumbent upon the defendant to narrow the issues, the defendant should not be entitled to raise new issues on appeal simply because those he relied upon at trial were unsuccessful. This is precisely the kind of situation where "judicial economy is served and prejudice is avoided by binding the parties to the facts presented and the theories argued below." *Higginbotham*, 540 F.2d at 768 n.10.

> The Supreme Court has recognized that:
>
> > The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.... Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt ... or where "injustice might otherwise result."

*Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). We do

---

**15.** This Court, however, expresses no opinion as to whether plaintiff's opposition conduct would have been—or should have been—found

by the trial court to be protected activity if the defendant had raised at trial the argument that

not have such a case before us here.[16] In fact, the Supreme Court's conclusion in *Singleton*—that injustice would more likely be *caused* than avoided by deciding the issue without one party having had an opportunity to be heard—is equally applicable here.

While a finding of discrimination is an ultimate fact subject to plenary review, we are bound to the subsidiary facts as found by the district court unless they are clearly erroneous. *See Thompson v. Leland Police Department*, 633 F.2d 1111, 1112 (5th Cir. 1980). Here, the district court's findings of subsidiary fact are not clearly erroneous, and there are sufficient subsidiary facts to support the ultimate finding that McLemore's failure to rehire plaintiff constituted discriminatory action under section 704(a). Since plaintiff made out his prima facie case of discrimination under section 704(a), and since the only explanation offered by the defendant for its failure to rehire plaintiff was correctly determined to be pretextual, the judgment of the district court for plaintiff is

AFFIRMED.

COLEMAN, Circuit Judge, dissenting.

I have long recognized that dissenting opinions are generally useless and, for that reason, have not always filed a dissent when disagreeing with a majority opinion or some part of it. Here, I choose to record my disagreement with the views of my distinguished Brethren of the majority.

The gravamen of my concern is found in the concession of the majority opinion p. 1138 that "The Fifth Circuit has not heretofore directly addressed the issue whether proof of an actual unlawful employment practice is necessary under the opposition clause, or whether an employee is protected from retaliation under the opposition clause if the employee reasonably believes that the employer is engaged in unlawful employment practices".

The majority then proceeds to hold that reasonable belief is enough.

However, the statute, 2000e–3(a), stripped of its inapplicable verbiage, reads:

It shall be an unlawful practice for an employer to discriminate against ... because he has opposed any practice made an unlawful employment practice by this subchapter.

The statute speaks in terms of practices—not what someone "reasonably believes" to have been a practice when, in fact, the practice did not exist. I cannot believe that Congress intended (since it did not say so) to penalize employers for what an employee or applicant "believes" when, in fact, the employer is innocent. To hold otherwise is to deprive employers of their property rights in violation of the due process clause.

Finally, I dissent because, as the majority concedes on pages 1140, 1141, the District Court made no finding [the majority adds the word "explicit"] that the plaintiff's option was based upon "reasonable belief". In proceeding to make its own, inferential, findings of fact the majority cites not a single specific fact that would support a finding of reasonable belief.

In the finish, I do not wish to be cast in the role of even appearing to approve boycotts against a whole community, the innocent and the guilty alike, as the kind of activity which Congress intended to protect by this statute.

I respectfully dissent.

---

the form of the opposition was unprotected by the statute.

**16.** The Supreme Court's enumeration of particular circumstances in which an appellate court might be justified in considering an issue for the first time on appeal was not intended to be an exclusive list. 96 S.Ct. at 2877 n.8. In the case at bar, however, there exists neither the circumstances specifically mentioned by the Supreme Court, nor any additional circumstances that would require us to exercise our discretion and to consider the defendant's new theory at this juncture. Consequently, we refuse to do so.