**Maxine J. AMOS, Plaintiff,**

v.

**HOUSING AUTHORITY OF the BIRMINGHAM DISTRICT, Defendant.**

Civil Action No. 94–AR–0611–S.

United States District Court, N.D. Alabama, Southern Division.

April 4, 1996.

Addendum Supplementing Opinion April 15, 1996.

Claudia H. Pearson, Robert M. Weaver, Nakamura & Quinn, Birmingham, AL, for plaintiff.

Edward S. Allen, Lisa Johnson Sharp, Balch & Bingham, Birmingham, AL, for defendant.

### *MEMORANDUM OPINION*

ACKER, District Judge.

At the conclusion of the evidence in the above-entitled case the court took under advisement the motion then filed by defendant, Housing Authority of the Birmingham District ("HABD"), pursuant to Rule 50(a),

F.R.Civ.P., seeking a dismissal of the action of Maxine J. Amos ("Amos"). HABD took and still takes the position that, as a matter of law, it is entitled to emerge victorious with the evidence being construed in favor of Amos. Reserving its ruling on this Rule 50(a) motion, the court submitted the case to the jury upon special interrogatories, and the jury gave answers that failed to moot the motion, which must now be ruled on.

HABD has gilded the lily by filing a redundant "renewed" motion for judgment after trial pursuant to Rule 50(b), a motion that is to be filed within ten (10) days "after entry of judgment." There was no triggering event for a Rule 50(b) motion, namely, an "entry of judgment," until today.

To understand this court's dilemma, it is necessary for a reader to obtain a reasonable grasp of the procedural background, which is just as important as an understanding of the evidence. The memorandum opinion entered by Hon. James H. Hancock on January 10, 1995, in response to HABD's motion for summary judgment, is essential reading. Judge Hancock is the judge to whom this case was previously assigned. His opinion will be referred to later.

In some ways the procedural posture and the evidence blend. Amos is a black female who was over 40 years of age when, while a probationary employee of HABD, she became displeased and downright irate over her treatment by HABD when it appointed another black female to the position Amos applied for and felt qualified for, namely, Acting Director of Human Resources. Amos was admittedly a probationary employee who could be terminated with less cause and with less "due process" than a non-probationary employee. She was admittedly experienced and highly knowledgeable in personnel and EEO matters from her prior academic training and extensive job experience, and at the time she was passed over she had already been assigned, as one of her duties at HABD, the important responsibility for responding to all EEO complaints. In other words, Amos, indisputably, was intimately familiar with the various federal statutes and procedures by which employees can complain to the EEOC against their employers, no matter which of the potpourri of federal statutes might be invoked. Without doubt, Amos was highly experienced in Title VII, Equal Pay Act, ADEA and ADA. Equally without doubt, Amos is a highly intelligent person.

After HABD picked Marilyn Jean Williams, a *summa cum laude* black female, for the human resources position instead of Amos, Amos promptly charged over to the EEOC. There she filed a charge of age discrimination against HABD. She presented nothing approaching serious evidence, either direct or circumstantial, of her age as a factor in HABD's decision to appoint Williams, beyond the fact that she was over 40 while Williams was under 40. The law now is, of course, that a person over 40 can claim age discrimination even though the successful competitor for the mutually sought-after position is also over 40, apparently leaving open the theoretical possibility that a 40–year old can complain under ADEA if passed over in favor of an 80–year old. It was, of course, patently obvious to Amos that, because she is black, she had no basis for charging race discrimination, because all of HABD's decision-makers were black. It is equally obvious that she could mount no bona fide claim of gender discrimination, because her only competition for the job was female. Likewise, she was afflicted with no disability recognized or protected by ADA. Her choice of ADEA as the vehicle for an employee discrimination claim could only have been arrived at by some distorted, if semi-intelligent, process of elimination. She could charitably be described as innovative. She could fairly be described as angry and fantastic. Because of Amos's action, HABD was suddenly and unexpectedly faced with a facially frivolous ADEA claim. Two months after Amos ran to the EEOC with her fanciful claim, she was terminated by HABD, whose subsequently articulated reasons for not selecting her for the disputed position, and whose subsequently articulated reasons for thereafter terminating her, were "poor performance," in particular her alleged failure to respond timely to an EEOC complaint filed by another employee, and her alleged failure to properly and efficiently "rate and rank"

several applicants for a particular job position.

In the complaint filed by Amos in this court, she invoked the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., on two separate grounds: first, that she was discriminated against because she was over 40; and second, that she was the victim of retaliation in the form of a discharge in reaction to her having filed a charge with the EEOC. She also invoked 42 U.S.C. § 1983, claiming a violation "under color of law" of the right to the "due process" guaranteed her by a combination of the Fourteenth Amendment and HABD's written personnel policy. This § 1983 claim disappeared before trial.

On December 9, 1994, Amos dismissed her count "alleging her non-selection for the position of Acting Director of Human Relations to be a violation of ADEA." This voluntary concession that her original claim of age discrimination was baseless should have surprised no one.

While Judge Hancock had the case, HABD filed a motion for summary judgment. Judge Hancock responded, *inter alia*, as follows:

In this case, plaintiff has met the first two requirements of establishing a prima facie case. The filing of her July 1993 EEOC charge is certainly a statutorily protected activity, and her subsequent dismissal in September 1993 qualifies as an adverse employment action. Defendant argues, however, that plaintiff has produced *no* evidence to support a causal connection between the filing of the July 1993 EEOC charge and her subsequent dismissal.[7] Plaintiff however, argues several points in demonstrating the connection between her filing of the EEOC charge and her subsequent dismissal. Plaintiff filed the first EEOC charge regarding her failure to receive a promotion on July 9, 1993, and she was discharged on September 3, 1993, just over two months later.[8] *The Eleventh Circuit has held that the establishment of a causal link for summary judgment purposes is patently different from establishing the causal link by a preponderance of the evidence at the trial stage.* At the summary judgment stage, the plaintiff need only establish that the protected activity and the adverse action were not wholly unrelated. "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action." *Hairston [v. Gainesville Sun Publishing]*, 9 F.3d [913] at 919 [ (11th Cir.1993) ]. Viewing all of the evidence in a light most favorable to the plaintiff, the court is satisfied that the defendant was, at least, aware of plaintiff's actions of filing the July EEOC charge when it dismissed plaintiff in September 1993.[9] *The short time period between plaintiff's actions and her dismissal and the fact that defendant knew of plaintiff's actions when it dismissed her do not necessarily establish, by a preponderance of the evidence, a causal link between the protected expression and the adverse action. However, these two factors are sufficient to establish a causal link for the purposes of withstanding a motion for summary judgment.* Thus, the court is satisfied that plaintiff has established, for the purposes of withstanding a motion for summary judgment, a prima facie case of retaliation.

Defendant has attempted to rebut the presumption of retaliation established by plaintiff's prima facie case by offering legitimate and clear reasons for the plaintiff's dismissal. The employer need only produce evidence which allows the trier of fact to conclude that the employment decision was not motivated by a retaliatory intent. The employer does not need to provide evidence that would *persuade* the trier of fact that its actions were not retaliatory. Put more simply, the burden is one of production and not persuasion. *See generally Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 [101 S.Ct. 1089, 67 L.Ed.2d 207] (1981). Defendant argues that plaintiff was discharged because the performance of her job was inadequate. More specifically, defendant argues that plaintiff was discharged because of irregularities involving rating and ranking for the Special Projects Manager Position and the failure to file an EEOC response which had been assigned to her. The defendant has sufficiently satisfied its

burden of showing legitimate, non-retaliatory reasons for its dismissal of the plaintiff, and the court is satisfied that plaintiff's prima facie case has been adequately rebutted.

As previously indicated, after the defendant has met its intermediate burden, the burden shifts back to the plaintiff to raise a genuine issue of fact regarding pretext. The burden that plaintiff must satisfy in order to avoid summary judgment is to introduce evidence that could form the basis for a finding of fact, which when viewed in a light most favorable to the plaintiff, could allow the trier of fact to determine, by a preponderance of the evidence, that the plaintiff has established pretext. "The only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed material facts at issue." *Hairston*, 9 F.3d at 920. The court is satisfied that there are material facts at issue regarding defendant's proffered reasons for plaintiff's dismissal and that plaintiff has produced evidence that would allow a trier of fact to determine by a preponderance of the evidence that defendant's reasons for plaintiff's dismissal were pretext. Defendant's first reason for plaintiff's dismissal involves "irregularities" concerning the rating and ranking of the Special Projects Manager. Defendant stated in its dismissal letter to plaintiff that she violated company policy in making her evaluations and that not adhering to policy resulted in an individual being ranked higher than she should have been, thus placing the defendant in legal jeopardy.[10] Defendant also stated in this letter that it was a violation of company policy for plaintiff to use indicators provided by the Director of Maintenance, the director actually hiring for the open position, in making her evaluations. However, plaintiff stated in deposition testimony that Deputy Director Len Williams advised her to consult with department managers if she was confused over an applicants qualifications. *See* Amos depo. pp. 77–78.[11] Defendant's second proffered reason for

plaintiff's dismissal is her failure to respond to an EEOC charge that had been assigned to her. However, plaintiff disputes that the EEOC charge was ever assigned to her. Plaintiff stated in her deposition testimony that Rosemary Bullock, in referring to the EEOC charge in question, told plaintiff to "scratch that off your list." A list of EEOC charges submitted by the defendant shows that the name of the investigator to whom the charge in question was assigned, plaintiff, was scratched out. Thus, there is a clear factual dispute as to whether plaintiff was in fact assigned this EEOC charge. Thus, the court is satisfied that plaintiff has produced evidence that places material facts at issue with regard to whether the proffered reasons given by the defendant for plaintiff's dismissal were pretext. For this reason, defendant's motion for summary judgment as to the retaliation claim, Count Two of plaintiff's complaint, is due to be denied. A separate order will be entered.

---

[7] Interestingly, in the very next sentence of its brief, defendant states that the only evidence of a casual connection offered by plaintiff is the timing of her discharge.

[8] In support of her argument establishing a causal connection, plaintiff also states in her brief that after filing the July 1993 EEOC charge her requests for time off were made more difficult; more onerous conditions were placed on the performance of her duties; and that she was given the "cold shoulder" by her supervisors. However, the pages cited from plaintiff's deposition in support of these allegations are not before the court. Nevertheless, *Donnellon v. Frehauf* [Fruehauf], 794 F.2d 598, 601 (11th Cir. 1986), as cited by the plaintiff, affirmatively supports plaintiff's position that the short period of time between the filing of the EEOC charge and her dismissal establishes a causal link.

[9] The July 16, 1993 EEOC Notice of Charge of Discrimination is proof that defendant had knowledge of plaintiff's actions at the time that plaintiff was dismissed.

[10] Defendant argues that this is so because lack of consistency in rating and ranking subjects the defendant to numerous lawsuits. *See* September 3, 1993 memorandum from Marilyn Williams to Maxine Amos, defendant's submission number six.

[11] Rosemary Bullock also apparently consulted with the Director of Maintenance in making some of her evaluations. *See* Bullock depo. pp. 37–39.

(emphasis supplied).

The undersigned, who inherited this case from Judge Hancock, agrees with him that

there is a difference between what it takes to get a case beyond Rule 56 scrutiny and what it takes to get it beyond Rule 50(a) scrutiny, although the inquiry is similar.

In this case Amos wanted to make as sure as she could that her claim of retaliation was not compromised or prejudiced by the obvious spuriousness of her initial age discrimination claim. For this reason she proposed the following jury instruction:

UNDERLYING CHARGE NOT AT ISSUE

You are not being asked to decide the plaintiff's underlying claim of discrimination and should not consider the merits of the underlying charge in deciding whether the defendant discharged the plaintiff in retaliation for filing the charge. An employer cannot discriminate against the employee for filing a charge and it makes no difference whether the underlying charge has merit.[2] It is enough that the employee believed there was a violation of the law and filed the charges in reliance on this belief.[3]

---

[2] *Pettway v. ACIPCO* [American Cast Iron Pipe Co.], 411 F.2d 998 (5th Cir.1969).

[3] *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130 (5th Cir.1981).

When HABD filed and argued its Rule 50(a) motion, this court expressed serious doubt about the viability of plaintiff's case. For that reason the court took defendant's motion under advisement. The court then gave its jury charge which included an instruction very much like the language above suggested by Amos. The court was doing its best to instruct the jury in a manner the court now finds to have been erroneous, namely, to require the jury not to consider whether Amos's claim of age discrimination had any merit.

Fortunately, the court, before charging the jury, did detect that another of Amos's requested charges, namely, a charge that would have allowed an award of compensatory damages for alleged mental anguish, was erroneous, as proven by the affirmance of this court in *Goldstein v. Manhattan Industries,* 758 F.2d 1435, 1446 (11th Cir.1985), cited with approval in *C.I.R. v. Schleier,* — U.S. —, —, n. 2, 115 S.Ct. 2159, 2162, n.

2, 132 L.Ed.2d 294 (1995). This court did not give such a charge, finding that a recovery for emotional distress was not permitted by ADEA. The case would have been messier than it now is if the jury, instead of limiting itself to determining the amount of Amos's lost wages, had compensated her for suffering. Although the jury was given the option provided by the ADEA for awarding liquidated damages in the event of retaliation, the jury inconsistently found that HABD's retaliation was not willful. The court finds it difficult, if not impossible, to conceive of an employer who is motivated by an intent to punish an employee for filing an EEOC charge (an action willful by its very nature), not also being guilty of an intent to violate the law or at least guilty of reckless disregard for the law. If someone besides this particular Solomonic jury could have found a way to conclude that this employer's deliberate retaliation against its EEOC complainer was a mere inadvertence, the court would appreciate that someone sharing that thought process. There is no logic to what this jury did in not awarding Amos liquidated damages. Probably it was no more than a jury recognition that to punish HABD under these circumstances would be grossly unfair.

The undisputed facts of this case create an anomaly which inhered from the date Amos filed it. Both parties have either suppressed their understanding of this anomaly or have consciously attempted to side-step it. Amos had an unsurmountable problem in any attempt to meet her obligation to prove by a preponderance of the evidence a causal connection between the filing of her EEOC charge and her discharge, without referring to the central, unspoken, perhaps unspeakable, fact, namely, the spuriousness of her EEOC charge. Except for this submerged fact the only proof of causation offered by Amos is the short time period between her trip to the EEOC and her discharge. Not only has HABD denied any causal connection between the firing and the EEOC charge, but it offered evidence of legitimate business reasons for terminating Amos, reasons which apparently the jury found unpersuasive.

■ This court appears to be the first to speak the unspoken. It should have never told the jury not to consider the merit of

Amos's EEOC charge of age discrimination. In fact, the court now concludes that, as a matter of law, the total lack of merit in Amos's EEOC charge is the crucial and dispositive fact. The two facts (1) that Amos's age discrimination claim was totally devoid of merit, and (2) that Amos had no reason whatsoever to believe that it had any merit, together make out the causal connection and simultaneously defeat plaintiff's claim.

As support for Amos's above-quoted requested charge, she cited *Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998 (5th Cir.1969), and *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130 (5th Cir.1981). These two cases deserve a closer look.

In *Pettway* it was "not at all clear that the [trial] court found the [employee's] letter [to the EEOC] motivated by malice." 411 F.2d at 1006. Implied in this language is an emerging limitation on retaliation claims, namely, if the employee's initial charge of discrimination was so ridiculous as to imply malice, or, in other words, was itself an act of retaliation, it is not protected by the anti-retaliation provisions. It follows that retaliation (by definition, a deliberate act) can beget permitted employer retaliation. It is true that *Pettway* contained the corollary that an employer cannot "unilaterally" judge the merits of its employee's EEOC charge, but *Pettway* left open the door for an employer, if it is sure that its employee knows that she is *acting with deliberate knowledge that her claim is spurious,* is able to discipline her at minimum risk. Without the insertion of the above-quoted language which presaged the cases to be discussed hereinafter, *Pettway* may have forever stood for the proposition that a disgruntled current employee can, with impunity, even acting with malice, file an EEOC claim with a smirk, knowing that her employer is a helpless, squirming victim.

■ Amos also cites *Payne,* decided over ten years after *Pettway.* In *Payne* the old Fifth Circuit was dealing specifically with a case of alleged retaliatory discharge. Although *Payne* involved Title VII, the same retaliation principle is incorporated in ADEA. *Payne* added to *Pettway* a critical dimension or nuance when it said:

To effectuate the policies of Title VII and to avoid the chilling effect that would otherwise arise, we are compelled to conclude that *a plaintiff can establish a prima facie case of retaliatory discharge under the opposition clause of section 704(a) if he shows that he had a reasonable belief that the employer was engaged in unlawful employment practices.* While the district court made no explicit finding that plaintiff's opposition was based upon a reasonable belief that McLemore's hiring and promotional policies violated Title VII, such a finding is implicit and is sufficiently supported by evidence in the record. Thus, plaintiff established that he reasonably believed that defendant McLemore's discriminated against blacks in employment opportunities.

654 F.2d at 1140 (emphasis supplied). *Payne* stands flatly for the proposition that as part of Amos's *prima facie* case she must show that she *reasonably believed* that she was the victim of age discrimination. Amos not only did not undertake this impossible burden, but she affirmatively disengaged on the issue. This court should have never given this case to a jury. If, when the court mistakenly submitted the case to the jury, the court had fashioned an interrogatory asking the jury if Amos had proven by a preponderance of the evidence that she *reasonably believed* that she was the victim being over 40 years of age, the jury answer would surely have been "No." This is, however, now an academic question. Not only did Amos, by dismissing her age discrimination claim, concede that her claim was baseless, but she as much as admitted the same thing on the stand. When she went running to the EEOC, she was transparently motivated by frustration and anger. What she did can only be explained as a thinking piece of irrationality. There was no evidence, credible or not, upon which a reasonable jury could have concluded that Amos "reasonably believed" her age kept her from getting the position she sought. Her best proof that she was fired by HABD in reaction to her EEOC charge was that *any* employer should be able to fire an employee who brings a patently false charge against that employer.

The *Payne* theme reappeared with a vengeance in *Rollins v. State of Fla. Dept. of*

*Law Enforcement,* 868 F.2d 397 (11th Cir. 1989), in which the Eleventh Circuit held:

We also recognize that the statute shields an employee from retaliation regardless of the merit of her complaints *so long as she can show a good faith, reasonable belief that the challenged practices violate Title VII. See Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1137 (5th Cir. Unit A Sept. 1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982). The only question before us, therefore, is whether the district court erred in holding that the hostile and disruptive manner in which Rollins complained of FILE's allegedly illegal employment practices transgressed the bounds of the protection afforded by section 704(a).

Though the legislative history of section 704(a) is murky, it is well established that *the protection afforded by the statute is not absolute.* This court has repeatedly recognized that some otherwise protected conduct may be so disruptive or inappropriate as to fall outside the statute's protection. *See Payne,* 654 F.2d at 1142; *Whatley v. Metropolitan Atlanta Rapid Transit Auth.,* 632 F.2d 1325, 1329 (5th Cir. Unit B 1980); *Rosser v. Laborers' Int'l Union, Local No. 438,* 616 F.2d 221, 223 (5th Cir.), *cert. denied,* 449 U.S. 886, 101 S.Ct. 241, 66 L.Ed.2d 112 (1980). We have held that *to qualify for the protection of the statute, the manner in which an employee expresses her opposition to an allegedly discriminatory employment practice must be reasonable. This determination of reasonableness is made on a case by case basis by balancing the purpose of the statute and the need to protect individuals asserting their rights thereunder against an employer's legitimate demands for loyalty, cooperation and a generally productive work environment. See Payne,* 654 F.2d at 1145.

In applying this balancing test, our approach is consistent with those of our sister circuits which have addressed the issue. *See Jones v. Flagship Int'l,* 793 F.2d 714, 728 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *Pendleton v. Rumsfeld,* 628 F.2d 102, 108 (D.C.Cir.1980); *Hochstadt v.*

*Worcester Found. for Experimental Biology,* 545 F.2d 222, 231 (1st Cir.1976). *But see Curl v. Reavis,* 740 F.2d 1323, 1329 n. 5 (4th Cir.1984) (dicta). *If, under this balancing test, the manner in which the employee complains is found to be unreasonable, it falls outside the protection of the statute; the employee's conduct then may be deemed an independent, legitimate basis for the denial of her promotion.*

*Id.* at 400–401 (footnotes omitted) (emphasis supplied).

The same idea has been repeated by the Eleventh Circuit as recently as *Meeks v. Computer Assoc. Inter.,* 15 F.3d 1013, 1021 (11th Cir.1994). There the Eleventh Circuit reiterated:

To recover for retaliation, the plaintiff "need not prove the underlying claim of discrimination which led to her protest," so long as she had a reasonable good faith belief that the discrimination existed.

Whether HABD was as blissfully unaware of *Payne* and its progeny as this court was, or was unwilling to put all of its eggs in such a basket by which it would be conceding, *arguendo* or actually, a causal connection between the firing of Amos and the EEOC charge, must remain a matter of conjecture. The question need not be answered in a case in which *Payne* so clearly applies so as to preclude Amos's claim of retaliation. It matters not whether the court finds the causal connection that the jury found, or assumes it *arguendo.* When a person skilled in human relations and trained to defend EEOC charges, makes a claim that has no logical basis, that claim could not have been made in good faith or upon a reasonable belief that it is meritorious. In fact, Amos's original age claim, if she had continued to pursue it, could easily have triggered a Rule 11 sanction, or it could have invited a counterclaim for abuse of process. HABD could have fired her with impunity, which is what it did.

A separate, appropriate order will be entered.

### ADDENDUM TO MEMORANDUM OPINION OF APRIL 4, 1996

Because the motion filed by defendant, Housing Authority of the Birmingham Dis-

trict, after the jury verdict included not only a renewal of its Rule 50 motion for judgment as a matter of law but an alternative motion for a new trial pursuant to Rule 59, F.R.Civ. P., the court now chooses to address briefly the said Rule 59 alternative.

In the event this court should be incorrect in having granted defendant's motion pursuant to Rule 50(a), F.R.Civ.P., on April 4, 1996, and dismissing the action, this court would grant defendant's Rule 59 motion and would vacate the jury verdict and any judgment entered thereon, because the court did not give to the jury plaintiff's requested charge based on *Payne v. McLemore's Wholesale and Retail Stores,* 654 F.2d 1130 (5th Cir.1981), as follows:

> It is enough that the employee believe there was a violation of the law and filed the charges in reliance on this belief.

If this was a case for the jury, the said concept should have been shared with the jury whether or not in the precise words suggested by plaintiff.

This shall be considered an addendum to the memorandum opinion of April 4, 1996.